**Daniel B. ALTMAN, Appellant
(Plaintiff Below),**

v.

**CIRCLE CITY GLASS CORPORATION,
et al., Appellee (Defendant Below).**

**No. 2–384–A–90.**

Court of Appeals of Indiana,
Second District.

Nov. 4, 1985.
Rehearing Denied Dec. 17, 1985.

Charles B. Huppert, Indianapolis, for appellant (plaintiff below).

Christopher D. Seigel, Indianapolis, for appellee (defendant below).

SULLIVAN, Judge.

Appellant Daniel B. Altman (Altman) initiated a quiet title action against appellee, Circle City Glass Corporation (Circle City). Circle City answered by asserting superior title and subsequently filed a counterclaim seeking to quiet title in the name of Circle City. The trial court granted summary judgment in favor of Circle City based upon the conclusion that Altman had constructive notice of Circle City's interest by virtue of a recorded memorandum of conditional sales contract and actual notice of the interest through a written commitment for title insurance issued by Lawyers Title Insurance Corp. to Altman. We affirm.

Altman presents two issues on appeal, which are restated as follows:

(1) Whether the recording of a memorandum of conditional sales contract for the sale of real property to Circle City, recorded prior to Altman's acquisition of a warranty deed to the real property, provided constructive notice of Circle City's interest in that real property.

(2) Whether the commitment for title insurance issued to Altman which reflected the existence of the recorded memorandum of conditional sales contract provided actual notice to Altman of Circle City's interest in the property.

The record discloses that on December 1, 1968, a real estate conditional sales contract was executed between Bert S. Brown and Elsie Brown as sellers and Circle City as buyer. Although Circle City fully paid for the real estate pursuant to the contract, Circle City never received a deed to the property from the Browns. The record reveals further that on June 21, 1976, Circle City recorded a memorandum of conditional sales contract which was signed only by Circle City's representative. Elsie Brown died in 1972; at which time her son, Bert S. Brown, acquired title to the real estate. Bert died in 1973, after which his widow and sole heir, Gertrude Phyllis Brown, inherited the subject realty. On January 26, 1983, Gertrude Brown conveyed the realty to Altman by means of a warranty deed, after which Altman recorded the deed. Several months prior to this conveyance, Altman had received a commitment for title insurance from Lawyers Title Insurance Corp. which stated that in order to obtain title insurance, Altman would first have to obtain a quitclaim deed from Circle City, "to terminate its interest in a Conditional Sales Contract, a Memorandum thereof having been recorded on June 21, 1976." Record at 78. Altman never obtained a quitclaim deed from Circle City.

Altman asserts that because he had no legal notice of the existence of an interest in the parcel of land he purchased from Gertrude Brown, he is a *bona fide* purchaser. Altman admits that he knew at the time of the purchase that a memorandum of conditional sales contract had been recorded. He argues that because a memorandum of a conditional sales contract is not a properly recordable instrument under the recording statutes of Indiana, the Circle City memorandum is a nullity, the recordation of which imparted neither constructive nor actual notice, and the existence of which could reasonably be ignored.

Circle City argues that because a memorandum of land contract is an instrument clearly entitled to be recorded in the office of the county recorder, Altman received constructive notice of Circle City's interest in the subject realty. To support its argument, Circle City cites the Indiana recording statutes which provide *inter alia* that every conveyance or mortgage of land and every lease for more than three years shall be recorded in order to take priority against a subsequent purchaser [1] and that to entitle any conveyance, mortgage or written instrument to be recorded, it must be acknowledged by the grantor or proved before any judge or clerk of a court of record.[2]

In addition, Circle City cites a statute in the Indiana tax code which provides that a memorandum of a land contract may be properly recorded in order to obtain a tax deduction from the assessed value of the property being purchased.[3]

## NOTICE

In our most recent discussion of the subject of notice, we stated:

"The law recognizes two kinds of notice, constructive and actual. Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence 'and charge a subsequent grantee with notice of all that is known by the record' (Citation omitted.) *Willard v. Bringolf* (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321. Notice is actual when it has been directly and personally given to the person to be notified ... (Citation omitted). *Willard, supra,* 103 Ind.App. at 29, 5 N.E.2d at 321."

*Wienke v. Lynch* (1980) 2d Dist.Ind.App., 407 N.E.2d 280, 286. This court has also recently held that an otherwise valid instrument which is not entitled to be recorded, or is improperly recorded or recorded out of the chain of title does not operate as constructive notice, but may bind persons having *actual* notice. *Rogers v. City of Evansville* (1982) 1st Dist.Ind.App., 437 N.E.2d 1019.

We conclude that Altman had *actual* notice of Circle City's interest in the disputed property, by virtue of the title insurance commitment, because it conveyed notice of the possibility of an adverse interest directly and personally to Altman, the person to be notified. Accordingly, we find it unnecessary to decide whether the memorandum of conditional sales contract was properly or improperly recorded and whether it did or did not provide *constructive* notice to Altman.

## ACTUAL NOTICE

More than 50 years ago, our Supreme Court defined actual notice as follows:

"[a]ctual notice has been divided into two classes, (1) express and (2) implied, which is inferred from the fact that the person charged had means of knowledge which he did not use. Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination, which, if made, would disclose the existence of other facts is sufficient notice of such other facts."

*Mishawaka St. Joseph Loan and Trust Co. v. Neu* (1935) 209 Ind. 433, 442–43, 196 N.E. 85, 89–90. The *Mishawaka* decision stands for the equitable principle that the means of knowledge combined with the duty to utilize that means equate with knowledge itself.

The question then arises whether the person charged with the duty to inquire had knowledge or means of knowledge of which he did not avail himself, so that

---

**1.** I.C. 32–1–2–16 (Burns Code Ed.Repl.1980).

**2.** I.C. 32–1–2–18 (Burns Code Ed.Repl.1980).

**3.** I.C. 6–1.1–12–1 (Burns Code Ed.Repl.1984).

knowledge must be implied. Whether knowledge of an adverse interest will be imputed in any given case is a question of fact. The totality of the circumstances must be evaluated objectively from the standpoint of what effect the knowledge of the possibility of an adverse interest would have upon men of reasonable prudence in the exercise of reasonable care. *Id.* at 445–446, 196 N.E. 85, 89–90.

This court reaffirmed and expanded the reasoning of *Mishawaka* in *Citizens Gas and Coke Utility v. Wells* (1971) 150 Ind. App. 78, 83, 275 N.E.2d 323, 327, where, quoting from Pomeroy's Treatise on Equity, we stated:

> "The inference [of actual notice] ... may be defeated by proper evidence. If the party shows that he made the inquiry with reasonable diligence, but still failed to [make discovery], he thereby overcomes and destroys the inference. If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man on inquiry, and which are of such a nature that the inquiry if prosecuted with reasonable diligence would certainly lead to a discovery, then the inference that he acquired the information constituting actual notice is necessary and absolute ..."

The same principle was applied in *Huffman v. Foreman* (1975) 1st Dist., 163 Ind. App. 263, 323 N.E.2d 651, which addressed the issue whether an unrecorded conditional sales contract had provided actual notice to the appellants who were subsequent purchasers. The *Huffman* court found that appellants did have actual notice of the conditional sales contract because they were presented with a copy of the contract at the closing and were also told that appellees were asserting an interest in the realty. The *Huffman* court concluded that because the facts were sufficient to put a reasonably prudent person on duty of inquiry, appellants were charged with the knowledge that such inquiry, reasonably prosecuted, would impart. *Huffman, supra,* 323 N.E.2d at 657.

In the instant case, Altman admits that he received a commitment for title insurance in 1982, which notified him that title insurance would not issue unless and until he obtained a quitclaim deed from Circle City, terminating its interest in a conditional sales contract, the memorandum of which had been recorded in 1976. Altman insists, however, that since the memorandum was not entitled to record, it was a nullity which he could reasonably ignore. He argues that because he purchased the subject realty for value without notice, he is a *bona fide* purchaser whose title to the property is superior to Circle City's. In addition, he argues that actual notice should include only notice of that of which he had actual knowledge. He maintains that because he never saw the recorded memorandum itself or the contract it referred to, he had no actual notice and hence no actual knowledge, of either.

Altman relies upon *Walters v. Hartwig* (1886) 106 Ind. 123, 6 N.E. 5, to support his contention that because he did not actually see the instrument of record but merely was told it existed, he received no actual notice. Altman has misinterpreted the *Walters* case, which held that while an instrument not entitled to go upon record is not constructive notice although recorded, such may impart actual notice. The *Walters* court stated:

> "We think it well settled that an instrument may be valid between the parties and those having actual notice, although it is not entitled to be admitted to record." 6 N.E. at 7.

Applying the foregoing to the facts of the instant case, we must agree with the trial court that Altman had actual notice of Circle City's interest by virtue of the written commitment for title insurance, even if the instrument to which it referred, the memorandum of conditional sales contract were not entitled to be admitted to record. The commitment for title insurance clearly indicated that Circle City had an interest in a conditional sales contract and that a quitclaim deed from Circle City would be required in order to terminate that interest.

This information placed upon Altman the duty to inquire. Consequently, he was chargeable with all of the facts which by a proper inquiry he would have ascertained. In other words, Altman had obtained knowledge of facts sufficient to put a reasonable person on inquiry, and of such nature that the inquiry, if prosecuted with reasonable diligence would have led to the discovery of Circle City's interest in the subject realty.

We acknowledge that the title insurance company's implication that a legitimate adverse interest actually existed in the disputed realty may have been unwarranted, but this does not alter the fact that Altman had actual notice. The title insurance company necessarily listed the procurement of the quitclaim deed from Circle City as a prerequisite to insurability in order to avoid liability to Altman, the insured, for a defect in his title pursuant to an adverse claim which might have arisen after he had given value.[4] For example, in *Lawyers Title Insurance Co. v. Capp* (1977) 1st Dist., 174 Ind.App. 633, 369 N.E.2d 672, it was held that where a title insurer had actual knowledge of the overlap of a tract to be sold onto a tract previously sold and had originally excepted that overlap from insurance coverage, and where the vendor had paid and relied upon the insurer to search the record and provide an accurate legal description, it could be assumed that the error was the title insurer's mistake.

In addition to liability under the policy, the title insurance company might have been liable for negligence in performing the title search and examination if it had failed to list a potential adverse interest. *See Lawyers Title Insurance, supra,* 369

N.E.2d at 674 n. 1 *citing Mayhew, Huston v. Deister* (1969) 144 Ind.App. 111, 244 N.E.2d 448 (suggesting a duty of care and potential tortious cause of action for negligence on the part of one examining an abstract of title and preparing an opinion therefrom).

In conclusion, the evidence of record supports the determination by the trial court that Altman did have actual notice of Circle City's interest in the disputed realty by virtue of the commitment for title insurance. He was, therefore, not a *bona fide* purchaser.

Accordingly, the judgment of the trial court quieting title in the name of Circle City is affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

4. Title insurance companies except most risks disclosed by the title examination and frequently refuse to insure a title unless exceptions for known defects are added to their regular form of coverage. Johnstone, *Title Insurance,* 66 Yale L.J. 492, 495 (1957).

Schedule B, Section 2 of the Commitment for Title Insurance from Lawyers Title Insurance Corp. issued in the instant case provides in pertinent part:

*"Exceptions*
The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:
1. Defects, liens, encumbrances, adverse claims or other matters, if any, created first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date of [sic] the proposed insured acquires for value of record the estate, or interest or mortgage thereon covered by this commitment."