In the Matter of the ESTATE OF
Herbert C. BURMEISTER,
Deceased.

SOCIETY NATIONAL BANK, INDIANA,
Executor, Appellant,

v.

ESTATE OF Herbert C. BURMEISTER,
Deceased, Appellee.

No. 71A03–9305–CV–156.

Court of Appeals of Indiana,
Third District.

Sept. 30, 1993.

John A. Burgess, M. Patricia Hackett, Barnes & Thornburg, South Bend, IN, for appellant.

James D. Nafe, Nafe & Nafe, South Bend, IN, for appellee.

STATON, Judge.

The executor of the estate of Herbert Burmeister, Society National Bank ("Bank"), appeals the probate court's judgment that the Bank be surcharged the sum of $84,833.60 for losses incurred by the estate.[1] The Bank raises two issues for our review which we consolidate into one and restate as follows: whether the probate court erroneously concluded that the Bank is liable to the primary beneficiaries because it was negligent in its handling of the stock owned by the estate.

We affirm.

Herbert Burmeister ("decedent") died testate on January 8, 1990, and by the terms of his will, the Bank's predecessor was appointed to serve as executor of his estate. After the Final Account was filed by the Bank, objections thereto were filed by Patricia and William Krillenberger, the primary beneficiaries of the estate. Specifically, the Krillenbergers objected to the Bank's handling of 20,200 shares of common stock of V.F. Corporation ("V.F. stock") which constituted 68% of the total estate.

■ Despite the fact that the value of the V.F. stock steadily declined after decedent's death, the Bank did not sell it until January of 1991, resulting in a loss to the estate of $250,543.00. The Bank contends it was not liable to the Krillenbergers for this loss because the Krillenbergers had indicated they wanted to take the stock as a distribution in kind. The trial court disagreed and entered the following pertinent findings of fact and conclusions of law:

8. That there appears to have been a communication problem between the primary residuary heir and her husband and the bank as fiduciary for the estate whereby the bank might have reasonably believed that the residuary heir and her husband were, for at least a time, desirous of and willing to take one-half of the V.F. stock as a distribution in kind....

9. That it is conceded by the Society National Bank that it was derelict in its fiduciary responsibility in several particulars,[2] and evidence disclosed that:

A. Prompt and timely sale of the V.F. stock was not made;

B. Contact was not made upon the heirs nor were all of them kept advised with reference to the action or lack of action with regard to the V.F. stock;

\* \* \* \* \* \*

15. That the Trial Brief of the Executor, in its Exhibit 1, appears to correctly reflect net losses to the estate in the amount of $220,347.00....

\* \* \* \* \* \*

### CONCLUSIONS OF LAW

2. That said Patricia Ann Krillenberger never indicated that she wanted all of the V.F. stock.

3. That Patricia Ann Krillenberger never indicated that none of the V.F. stock should be sold but did give an initial indication to the bank that she might

---

1. **IND.CODE** 29-1-16-1(c) (1988) provides in pertinent part: Every personal representative shall be liable for any loss to the estate arising from his neglect or unreasonable delay in ... selling ... the property of the estate....

2. Contrary to the Bank's assertion, the probate court did not find that the Bank conceded a

breach of fiduciary duty with respect to the Krillenbergers specifically. It is undisputed that the Bank conceded a dereliction of fiduciary responsibility with respect to the other. beneficiaries. Thus, we cannot say that this finding is clearly erroneous.

be interested in taking one-half of it in kind as a part of her distribution.

\*  \*  \*  \*  \*  \*

6. That since William John Krillenberger and Patricia Ann Krillenberger led the bank to believe that they were willing to consider taking one-half of the V.F. stock in kind, they are only entitled to their 77% distribution rate computed against one-half of the net loss. This would be $84,833.60, being one-half of $220,347.00, multiplied by 77%.

Record, pp. 106–09.

■■■ When a party has requested specific findings of fact and conclusions of law under Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this Court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Board of Commissioners v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■■■ This same standard of review applies when the trial court gratuitously enters specific findings of fact and conclusions of law, with one notable exception. When the trial court enters such findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any

issue upon which the court has not found. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652. We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

Viewing the evidence most favorable to the judgment, the Bank's trust officer asked the Krillenbergers on January 25, 1990 whether they wanted to take the stock as a distribution in kind. Patricia Krillenberger replied that she was unaware that she had that option, that she might be interested in taking one-half of the stock as a distribution in kind, but that she would have to think about it. Record, pp. 248–49. The Bank did not sell any of the stock, nor did it communicate further with the Krillenbergers until meeting with them on June 22, 1990.

The meeting on June 22 was arranged because the Krillenbergers did not know whether any or all of the V.F. stock had been sold, and the market value of the stock had already depreciated in value to approximately $24.86 per share. Patricia Krillenberger testified that when she asked the Bank's trust officer why the stock had not been sold, she was told that neither the Bank nor the Krillenbergers could sell the stock because neither owned it. She further testified that she and her husband agreed not to sell the V.F. stock until it reached $30.00 per share only after they were advised to do so by the Bank.

Because the value of the stock continued to decline, the Krillenbergers arranged another meeting with the Bank in November of 1990. At this time, Patricia offered to take one-half of the V.F. stock as a distribution in kind, provided the Bank reimbursed her for the loss in value of the remaining one-half that was caused by the Bank's failure to properly handle the stock. After the Bank refused her offer, Patricia informed the Bank that she was no longer interested in a distribution in kind. On January 8, 1991, the Krillenbergers directed the Bank to sell the V.F. stock and prepare the final accounting.

The Bank argues it is not liable to the Krillenbergers because they participated in the June 22nd decision not to sell the V.F.

stock until it reached $30.00 per share, and because the Krillenbergers caused the ultimate loss to the estate by directing the Bank to sell the stock in January of 1991 when it was worth only $19.00 per share.[3] In support of its argument, the Bank cites IND. CODE 30–4–3–19 (1988) which provides in relevant part:

> (a) Unless the terms of the trust provide otherwise ... a beneficiary, except as provided in subsection (b) of this section, relieves the trustee from liability for breach of trust as to that beneficiary's interest if he:
>
>> (1) consents to or acquiesces in the act or omission which constitutes a breach of trust; [or]
>>
>> \* \* \* \* \* \*
>>
>> (4) participates in the act of the trustee which constitutes the breach of trust.

However, subsection (b) states as follows:

> (b) The consent, acquiescence, agreement to release or discharge, affirmance, or participation by a beneficiary will not relieve the trustee from liability if:
>
>> \* \* \* \* \* \*
>>
>> (2) at the time it was given the beneficiary did not know of his rights or all of the material facts which the trustee knew or should have known; [or]
>>
>> (3) it was induced by the trustee's improper conduct. . . .

From the evidence described above, the probate court could have found that the Krillenbergers indicated an interest in taking only one-half of the stock as a distribution in kind, and that they agreed to retain the stock until it reached $30.00 per share only because they were advised to do so by the Bank. Too, the probate court could have concluded that the Krillenbergers' decision to sell the stock in January of 1991 does not relieve the Bank from liability because it was induced by the Bank's im-

proper handling of the stock up to that point. Because there is evidence to support the probate court's findings, and the findings support the judgment, we find no reversible error here.

Affirmed.

HOFFMAN and ROBERTSON, JJ., concur.

---

**3.** At the time of trial, the V.F. Stock had rebounded, and was selling at approximately $56.00 per share.