**KEYBANK NATIONAL ASSOCIATION, Appellant–Plaintiff,**

v.

**NBD BANK, f/k/a The Indiana National Bank, Associated Property Services, Inc., and Frazier Farms, Ltd., Appellees–Defendants.**

No. 55A01–9802–CV–53.

Court of Appeals of Indiana.

Sept. 18, 1998.

---

Craig D. Doyle, Charleyne L. Gabriel, Leeuw & Doyle, Indianapolis, for Appellant–Plaintiff.

Stephen A. Oliver, Boren & Oliver, Martinsville, for Appellees–Defendants.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Keybank National Association ("Keybank") appeals the judgment, after a trial before the bench, that a mortgage held by Appellee–Defendant NBD Bank ("NBD") had priority over a mortgage held by Keybank. We reverse.

### Issues

Keybank raises four issues which we restate and consolidate into two as follows:

I. Whether the trial court's determination that Keybank's mortgage was a nullity was clearly erroneous.

II. Whether Keybank qualified as a bona fide purchaser in good faith without notice such that its mortgage had priority over the NBD mortgage which had been recorded outside the chain of title.

## Facts

The operative facts are not disputed. The parcel of real estate which is the subject of this dispute is known as the "Toole Real Estate" and is identified by the following legal description (pertinent part only): "Sections 13 and 14, Township 12 North, Range 1 *West.*" (R. 373) (emphasis added). In 1985, John V. and Geneva P. Loudermilk ("Loudermilk") obtained the property by a deed which was properly recorded in the Recorder's office. (R. 373).

Later in 1985, Loudermilk executed a promissory note in the principal amount of $2,100,000.00. (R. 373). The note was secured by a mortgage on the Toole Real Estate given to NBD. (R. 373). However, the NBD mortgage contained the following erroneous legal description: "Sections 13 and 14, Township 12 North, Range 1 *East.*" (R. 373) (emphasis added). The legal description described an existing parcel of real estate which Loudermilk did not own. (R. 373). The mortgage was indexed in the Recorder's office consistent with the legal description contained in the mortgage and, thus, out of the chain of title of the Toole Real Estate. (R. 373).

In 1990, Loudermilk conveyed the Toole real estate, together with an additional parcel of real estate to Frazier Farms, LTD ("Frazier"). (R. 373). The deed representing this conveyance contained the correct legal description and was recorded in 1990. (R. 373).

In 1992, Frazier quitclaimed a parcel of real estate which included a portion of the Toole real estate to Loudermilk's son, Tracy Loudermilk ("Tracy"). (R. 374, 940). The address of this property was 3345 Pitkin Road and the correct legal description was "Sections 13 and 14 Township 12 North, Range 1 West." (R. 393, 940). The quitclaim deed representing this conveyance contained the following erroneous legal description: "Sections 13 and 14 *Range* 12 North, Range 1 West." (R. 374, 380) (emphasis added). This quitclaim deed was recorded in 1992. (R. 374, 940). The deed was recorded in the Toole Real Estate chain of title despite the error in the legal description because there are no properties identified by two range designations and, thus, it was obvious from the face of the deed that the Range 12 North should have read Township 12 North. (R. 933, 940).

In 1994, Tracy executed a promissory note in favor of Keybank in the amount of $92,-050.00. (R. 374). Tracy executed a mortgage in favor of Keybank to secure the note. (R. 374). The Keybank mortgage contained the same error in the legal description as the quitclaim deed. (R. 374). The Keybank mortgage was recorded in 1994. (R. 374). Again, the mortgage was recorded within the Toole Real Estate chain of title despite the defect in the legal description. (R. 883).

Later in 1994, Tracy filed for relief under Chapter 7 of the United States Bankruptcy Code. (R. 374). In 1995, Keybank initiated the present foreclosure action seeking to execute upon its mortgage. (R. 15–25). Neither NBD or Keybank discovered the errors in their respective mortgages. (R. 374–75). Instead, the trial court discovered the errors during the course of these proceedings. (R. 374–75).

After a bench trial, the trial court determined that Tracy's quitclaim deed and Keybank's mortgage were a nullity due to the error in the legal description. (R. 377–78). Accordingly, the trial court determined that NBD's mortgage had priority over Keybank's mortgage. (R. 379). This appeal followed.

### Discussion and Decision
#### Standard of Review

On appeal of claims tried by the court, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Breeden v. Breeden,* 678 N.E.2d 423,

425 (Ind.Ct.App.1997). The judgment is clearly erroneous only when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *Id.* Findings of fact are clearly erroneous only when the record lacks any evidence to support them. *Id.* In reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any issue upon which the court has not found. *Matter of Estate of Burmeister,* 621 N.E.2d 647, 649 (Ind.Ct.App.1993). The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corp.,* 607 N.E.2d 978, 982 (Ind.Ct.App. 1993), *trans. denied.* Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute the basis for reversal even if erroneous. *Williams v. Rogier,* 611 N.E.2d 189, 196 (Ind.Ct.App. 1993), *trans. denied; Donavan v. Ivy Knoll Apartments Partnership,* 537 N.E.2d 47, 52 (Ind.Ct.App.1989).

### I. Validity of Keybank Mortgage

■■■■ In order for a mortgage to be effective, it must contain a description of the land intended to be covered sufficient to identify it. *In re Dunn,* 109 B.R. 865, 873 (Bkrtcy.N.D.Ind.1988) (citing *Coquillard v. Suydam,* 8 Black F. 24 (1846) and *Godfrey v. White,* 32 Ind.App. 265, 69 N.E. 688, 691 (1904)). The test for determining the sufficiency of a legal description is whether the tract intended to be mortgaged can be located with certainty by referring to the description. *Matter of Estate of Lawrence,* 565 N.E.2d 357, 359 (Ind.Ct.App.1991). In *Lawrence,* the legal description contained an error such that the area described encompassed more property than the landowner owned. *Id.* We held that the description

was sufficient to establish the lien over the landowner's property because the tract intended to have been mortgaged fell within the description. *Id.* In *Hannon v. Hilliard,* 101 Ind. 310 (1884), a mortgage which erroneously read "the west part of the *north* east half of the northwest quarter ..." where only the word *"north"* should not have been inserted before "east half of the northwest quarter" was sufficient to describe the property in question because no ambiguity existed regarding what parcel of property the parties had intended, nor did the description describe property other than that intended. *Id.* at 311–12, 315.

The same result obtains in the present case with respect to the Keybank mortgage because the error in the legal description was obvious *on its face* and had not caused ambiguity regarding the property intended to have been described. The error was obvious because it is axiomatic that a legal description cannot have two "Range" designations. Furthermore, it was obvious that the Township designation had been omitted and, therefore, the extra Range designation had been accidentally substituted for the Township designation. Therefore, the Keybank mortgage was valid because the precise tract intended, the 3345 Pitkin Road property, could be located despite the typographical error in the legal description. Moreover, the mortgage had been properly recorded within the chain of title despite the error. Accordingly, the trial court's determination that the error in the Keybank mortgage rendered it a nullity was clearly erroneous.

### II. Priority of Mortgages— Bona Fide Purchaser

■■■■ As stated in 25 I.L.E. *Sales of Realty* § 101:

The doctrine of equity by which protection is afforded to a bona fide purchaser against prior equities of which he has no notice is based on the theory that, in reliance on the legal title, he has parted with a consideration of value or divested himself of some legal right or been induced to change his condition so that a deprivation of the legal title would work him injustice.

In order to qualify as a bona fide purchaser, one has to purchase in good faith, for a valuable consideration, and without notice of the outstanding rights of others. *Id.; John v. Hatfield,* 84 Ind. 75, 81–82 (1882). The theory behind the bona fide purchaser defense is that every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration without notice of a legal defect. *Lamb v. Lamb,* 569 N.E.2d 992, 994 (Ind.Ct.App.1991).

The purpose of the recording statute, IND.CODE § 32–1–2–16, is to provide protection to subsequent purchasers, lessees, and mortgagees. *Szakaly v. Smith,* 544 N.E.2d 490, 491 (Ind.1989). Instruments will have priority according to the time of the filing thereof. *Id.* A record outside the chain of title does not provide notice to bona fide purchasers for value. *Id.* The recording of an instrument in its proper book is fundamental to the scheme of providing constructive notice through the records. *Hadfield v. Hadfield,* 128 N.J.Eq. 510, 17 A.2d 169, 171 (1941). The duty rests on the lienholder to ensure that his mortgage is properly recorded within the chain of title. *Id.* A landowner will be held to have constructive notice of any instrument recorded within his chain of title. *McIntyre v. Baker,* 660 N.E.2d 348, 352 (Ind.Ct.App.1996). A person charged with the duty of searching the records of a particular tract of property is not on notice of any adverse claims which do not appear in the chain of title; because, otherwise, the recording statute would prove a snare, instead of a protection. *Stead v. Grosfield,* 67 Mich. 289, 34 N.W. 871, 874 (1887).

The law recognizes two kinds of notice, constructive and actual. *Altman v. Circle City Glass Corp.,* 484 N.E.2d 1296, 1298 (Ind.Ct.App.1985), *trans. denied.* Constructive notice is provided when a deed or mortgage is properly acknowledged and placed on the record as required by statute. *Id.* However, an otherwise valid instrument which is not entitled to be recorded, improperly recorded, or recorded out of the chain of title does not operate as constructive notice, although binding upon persons having actual notice. *Id.* Notice is actual when notice has been directly and personally given to the person to be notified. *Id.* Additionally, actual notice may be implied or inferred from the fact that the person charged had means of obtaining knowledge which he did not use. *Id.* Whatever fairly puts a reasonable, prudent person on inquiry is sufficient notice to cause that person to be charged with actual notice, where the means of knowledge are at hand and he omits to make the inquiry from which he would have ascertained the existence of a deed or mortgage. *Id.* Thus, the means of knowledge combined with the duty to utilize that means equates with knowledge itself. *Id.* Whether knowledge of an adverse interest will be imputed in any given case is a question of fact to be determined objectively from the totality of the circumstances. *Id.* at 1299. In *Altman,* we found that Altman had actual/inquiry notice of an adverse interest in real property because he had received a letter from a title insurance company advising him of the necessity to terminate the adverse interest. *Id.* Similarly, in *Huffman v. Foreman,* 163 Ind.App. 263, 323 N.E.2d 651 (1975), we held that Huffman had actual/inquiry notice when, at closing, he had been provided with a copy of a conditional land sales contract which purported to convey an interest in the property in question. *Id.* at 657.

In *State ex rel. Graham v. Walters,* 31 Ind.App. 77, 66 N.E. 182 (1903), a mortgage was misrecorded as the N.E. ¼ of a certain section instead of the N.W. ¼ of that section. We held that such a misdescription of the land in the record in the mortgage rendered the recording worthless such that a subsequent mortgage, given in good faith for valuable consideration, had priority over the earlier mortgage. *Id.* at 183. Similarly, in *Rinehardt v. Reifers,* 158 Ind. 675, 64 N.E. 459 (1902), our supreme court held that a mortgage which contained an erroneous legal description as "lots 13 and 14 in University Park addition" was ineffective to provide notice where the correct legal description should have read "lots 13 and 14 in University Park, *Second Addition.*" (emphasis added). *Id.* at 459. Our supreme court noted that where the error in a legal description identifies another body of land, it will not be effective against a subsequent mortgagee who accepted his mortgage in ig-

norance of the mistake, and in bona fide reliance upon the appearance of the public record. *Id.*

In the present case, the NBD mortgage was recorded outside the chain of title. Therefore, Keybank had no constructive notice. Nor has there been any contention that Keybank had been directly and personally given actual notice of the NBD mortgage. Nevertheless, NBD contends that Keybank had actual/inquiry notice of the NBD mortgage because "a proper review of [the public records] should have disclosed not only the existence of the NBD mortgage, but the nature of the scrivener's error in that mortgage when compared to the warranty deeds in [Tracy Loudermilk's] chain of title." (Appellee's brief at 13). Furthermore, NBD presented substantial evidence that Keybank "failed to discover that which a proper search would have disclosed." (Appellee's brief at 13).

We disagree. As noted above, the NBD mortgage described an entirely different tract of land than the Toole Real Estate. Thus, the NBD mortgage had been recorded out of the chain of title for the Toole Real Estate. Accordingly, the public records could not have placed Keybank on notice, whether constructive, actual, or inquiry, of the NBD mortgage. Subsequent purchasers, lessees, and mortgagees must be able to rely on the public record. To hold otherwise would cause the recording statute to prove a snare, instead of a protection.

Based on the above, we conclude that the Keybank took its mortgage on the Toole real estate as a bona fide purchaser, in good faith, for a valuable consideration, and without notice of the NBD mortgage. Accordingly, the Keybank mortgage has priority over the NBD mortgage. Therefore, we must reverse and remand for further proceedings consistent with this decision.

Reversed.

NAJAM and RILEY, JJ., concur.