

FILED

Jun 12 2017, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jon L. Orlosky
Muncie, Indiana

ATTORNEYS FOR APPELLEE
CROWN CASTLE SOUTH LLC

Christopher S. Roberge
Elizabeth A. Roberge
Roberge Law
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David L. Jenner and Vickie Jenner, *Appellants-Petitioners,* <br><br> v. <br><br> Bloomington Cellular Services, Inc., *Appellee-Respondent,* <br><br> and <br><br> Crown Castle South LLC, *Appellee-Intervenor.* | June 12, 2017 <br><br> Court of Appeals Case No. 53A05-1606-MI-1415 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable E. Michael Hoff, Judge <br><br> Trial Court Cause No. 53C01-1409-MI-1703 |

**Bailey, Judge.**

# Case Summary

David L. Jenner and Vickie Jenner ("the Jenners") appeal the trial court's judgment in favor of Crown Castle South, LLC ("Crown Castle"), which declared the Jenners' tax deed to certain real property void. The Jenners raise three issues for our review, which we consolidate and restate as whether the trial court abused its discretion when it granted Crown Castle's motion for relief from judgment under Trial Rule 60(B) and found the Jenners' tax deed void for lack of statutory compliance.

We affirm.

# Facts and Procedural History

In December of 1988, Bloomington Cellular Services, Inc. ("Bloomington Cellular") became the owner of certain real property in Bloomington on West Vernal Pike ("the Property") and had its interest in the Property recorded. Bloomington Cellular subsequently merged with Westel-Indianapolis Company ("Westel"), though the chain of title to the Property did not reflect the merger. At some point, a 228-foot tall cellular communications tower was built on the Property.

In 1999, Westel leased the maintenance and operation of the cell tower to Crown Castle. In March of 2000, Westel and Crown Castle entered into a supplemental lease agreement. Crown Castle recorded the supplemental lease agreement with the Monroe County Recorder in May of 2000. While the

supplemental lease agreement refers to the 1999 lease agreement, the 1999 lease agreement was not recorded. The supplemental lease agreement was not placed in the chain of title for the Property in which Bloomington Cellular's ownership of the land had been recorded. In August of 2008, Crown Castle entered into a sublease agreement with T-Mobile Central LLC ("T-Mobile") for T-Mobile to use the cell tower. The sublease agreement was recorded with the Monroe County Recorder in April of 2009, but it, too, was not placed in the chain of title with Bloomington Cellular's interest.

[5] On October 2, 2014, the Monroe County Treasurer held a tax sale. At that tax sale, the Jenners purchased the tax sale certificate for the Property. The Jenners then did a title search on the Property and discovered only Bloomington Cellular as an interest holder in the Property's chain of title. Accordingly, the Jenners provided Bloomington Cellular with the required notices, and, when Bloomington Cellular failed to redeem the Property, in November of 2015 the Jenners obtained a tax deed.

[6] Less than one month later, the Jenners contacted Crown Castle for the first time regarding the Jenners' claim of ownership of the Property. Crown Castle then attempted to negotiate with the Jenners regarding Crown Castle's rights to the cell tower, but, in February of 2016, the Jenners rejected Crown Castle's offer. Later that month, Crown Castle intervened in the Jenners' tax-sale proceedings

and moved, under Indiana Trial Rule 60(B), to have the court set aside the tax deed as void.[1]

[7] The court held a hearing on Crown Castle's motion in May of 2016. At that hearing, Crown Castle stated that it had two recorded interests in the Property, the 2000 supplemental lease agreement and the 2008 T-Mobile sublease agreement. However, Crown Castle acknowledged that, absent an online search of the Monroe County Recorder's office for either Westel or Crown Castle specifically, those interests would not have been discovered. And Crown Castle further acknowledged that it was "not sure there would be a basis for [the Jenners] to even make that search" based only on a review of the Property's chain of title. Tr. at 6.

[8] Nonetheless, Crown Castle further argued that the Jenners should have known of Crown Castle's possible interests not based on the Property's chain of title but, rather, based on conspicuous signage at the Property that identified Crown Castle as the operator of the cell tower. That signage also provided Crown Castle's contact information. Crown Castle offered a photograph of the signage, which was dated April 16, 2015, to the court as a "demonstrative exhibit" rather than as an evidentiary exhibit. *Id.* at 7. The Jenners did not

---

[1] The trial court concluded that, although Crown Castle's motion was outside the sixty-day period provided for under Indiana Code Section 6-1.1-25-4.6, the motion was nonetheless permissible in accordance with the timeframe described under Indiana Trial Rule 60(B). On appeal, the Jenners do not challenge the trial court's conclusion on that issue and we do not consider it. *See* Ind. Appellate Rule 46(A)(8)(a).

object to this procedure or to Crown Castle's display of the photograph to the court.

[9] Rather, the Jenners argued that the photograph did not deserve to be given weight by the court for several reasons, namely: there was no indication as to where on the property the signage had been placed; there was "no evidence that these signs were readily available to the public" or "readily accessible…without trespassing"; and, despite the photograph's apparent date of April 16, 2015, "there is no evidence as to when [the signs were] placed." *Id.* at 11. The Jenners further argued that "an interest that was recorded outside of the chain of title…is no notice" to third parties. *Id.* at 15.

[10] Following the parties' arguments, the court took the matter under advisement. Subsequently, the court granted Crown Castle's motion for relief from judgment and declared the tax deed void for lack of notice to a substantially interested party during the period of redemption. The court stated that Crown Castle's signage on the Property put the Jenners on inquiry notice of Crown Castle's possible interests, and, as the Jenners did not follow up on that notice and inform Crown Castle of the tax sale during the redemption period, the tax deed was therefore void. This appeal ensued.

# Discussion and Decision

## The Nature of the Jenners' Appeal

[11] The Jenners appeal the trial court's order granting Crown Castle's motion for relief from judgment under Trial Rule 60. An order for relief from judgment under Trial Rule 60 is an equitable remedy within the trial court's discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013). We review an order upon a motion for relief from judgment for an abuse of the trial court's discretion. *Id.* An abuse of discretion occurs when the trial court's order is clearly against the logic and effect of the facts and inferences supporting the judgment. *Z.S. v. J.F.*, 918 N.E.2d 636, 639 (Ind. Ct. App. 2009).

[12] Here, Crown Castle sought relief from judgment—namely, the trial court's order granting the Jenners a tax deed—on the basis that it had not been served with notice of the Jenners' request for the tax deed as required by our tax sale statutes. The trial court concluded that the Jenners' notices were not in substantial compliance with the statute because no notice of the Jenners' petition for a tax deed had been given to Crown Castle. The court found that Crown Castle's interest in the property had been recorded and was available for inspection, and that Crown Castle's interest in the leasehold was further made clear through the placement of signs on the property. Thus, the court reasoned, the tax deed was void because the Jenners did not comply with the requirements of Indiana Code section 6-1.1-25-4.5 for notice prior to the issuance of a tax deed. The court also concluded that the Jenners had been

placed on additional notice of the existence of Crown Castle's interest because of language on a sign that Crown Castle had placed on a fence on the property. The sign requested that parties with inquiries regarding leases or other matters contact Crown Castle, and provided contact information.

[13] The Jenners contend that the trial court erred. The Jenners argue that Crown Castle's lease, though concededly recorded validly, was recorded outside the chain of title. As a result, the Jenners contend, they were unable to identify Crown Castle as an interest holder and thus were unable to provide notice of their petition for a tax deed under Section 6-1.1-25-4.5, so that they had substantially complied with the notice requirements. The Jenners argue that they were entitled to the same treatment as a *bona fide* purchaser for value; that they consequently were not required to provide notice to Crown Castle; and that the trial court erred when it determined that the Jenners lacked that status and thus concluded that the Jenners had failed to provide notice and that their deed was void. The Jenners also argue that the trial court erred in giving any weight to the sign on the fence next to the tower, and that the trial court had thereby abused its discretion when it concluded that the Jenners had sufficient information from which to identify Crown Castle and provide notice of the tax deed petition.

## Nature of *Bona Fide* Purchasers and Tax-Sale Purchasers

[14] Because the Jenners premise their appeal in large part upon whether they are entitled to treatment as *bona fide* purchasers for value, the resolution of the

appeal must account for the nature of a *bona fide* purchaser for value and the rights of a tax-sale purchaser.

[15] A *bona fide* purchaser for value is entitled to protection from interest-holders outside the chain of title as a matter of equity because she or he has made a purchase "for a valuable consideration *without notice of a legal defect*." *Keybank Nat'l Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind. Ct. App. 1998) (emphasis added). "A record outside the chain of title does not provide notice to *bona fide* purchasers for value." *Id.* That is, a *bona fide* purchaser for value without notice of a competing interest in the chain of title is an innocent buyer, and thus is entitled to protection against those interests not readily discoverable through a search through a given chain of title.

[16] The very nature of a tax sale means that a tax-sale purchaser *cannot* be a *bona fide* purchaser for value. Purchase of an interest in property through a tax sale is inherently made with notice of a significant impediment to clear title: namely, that a lien arose because tax payments for the property at issue were delinquent. Also unlike a *bona fide* purchaser for value, the tax-sale purchaser is not purchasing title to the land in a standard market transaction. She or he is instead paying the outstanding tax owed on the land and receives in exchange a certificate evidencing the sale. "After the expiration of the redemption period … but not later than three (3) months after the expiration of the period of redemption," a tax sale purchaser may "file a verified petition" seeking the issuance of a tax deed by the court in which the judgment of sale was entered. I.C. § 6-1.1-25-4.6(a).

[17]     Thus, in exchange for paying the past-due taxes, the tax-sale purchaser does not as a matter of right gain title to the land. Rather, usually by risking pennies on the dollar relative to the fair-market value of the land, the tax-sale purchaser obtains a legal right to later seek a deed to the land—*if* the tax-sale purchaser complies with the requirements set forth by the Indiana General Assembly in the tax-sale statutes. *See, e.g.*, I.C. § 6-1.1-25-4.5 (setting forth the numerous elements that must be satisfied for a tax-sale purchaser to obtain a valid tax deed).

[18]     Thus, a tax-sale purchaser is not only not a *bona fide* purchaser for value, the tax-sale purchaser has not acquired any kind of title at all by paying the redemption amount due at the tax sale. Rather, the right obtained through a tax sale is to engage in legal proceedings that *might* result in obtaining a tax deed to the land. Those proceedings might also result in a full or partial refund of the money paid at the tax sale if a competing interest holder redeems the property. I.C. §§ 6-1.1-25-4.6(h) & (i). Or, if the notice requirements of the statute are not satisfied, the proceedings may result in the tax-sale purchaser losing both the opportunity to obtain a tax deed *and* the money paid at the tax-sale. I.C. § 6-1.1-25-4.6(j) (providing that "the court shall not order the return of the purchase price or any part of the purchase price if: (1) the purchaser of the certificate of sale … has failed to provide notice or has provided insufficient notice as required by section 4.5 of this chapter" where the sale is otherwise valid).

[19]     This speculative approach in which a tax-sale purchaser buys not title itself, but a chance to obtain title (generally by means of a lien), is a common one among our sister States. *Patton and Palomar on Land Titles* § 490 (3d ed. 2003). "Many states require strict compliance with the statutory tax sale procedure in order to effectively divest the title of the tax debtor and bar the right of redemption." *Id.* And because tax sales result in forfeiture, which the law disfavors generally, *Gates v. Houston*, 897 N.E.2d 532, 536 (Ind. Ct. App. 2008) (citing *Skendzel v. Marshall*, 261 Ind. 226, 231, 301 N.E.2d 641, 644 (1973)), "courts generally strictly construe the applicable statutes in favor of the landowner." *Patton and Palomar on Land Titles* § 490. In other words, the tax-sale purchaser is gambling that the money paid at a tax sale and her or his efforts to comply with the applicable statutes, taken together with prior interest-holders' apparent lack of concern for or inability to continue their ownership of property, will result in fee simple ownership of land. While this gamble may routinely pay off for tax-sale purchasers, the purchase of a chance to own a property interest at a tax sale is a far cry from the type of purchase made by a *bona fide* purchaser for value.

## Construction of the Tax Sale Statutes

[20]     Keeping in mind the nature of a tax sale as compared to a sale of property to a *bona fide* purchaser for value, an examination of the statutory scheme underlying the Jenners' arguments is in order.

[21]     Seeking to step into the shoes of a *bona fide* purchaser for value, the Jenners raise issues of statutory construction with respect to the tax-sale statute.

Statutory interpretation is a pure question of law, which is reviewed *de novo*. *J.D.M. v. State*, 68 N.E.3d 1073, 1077 (Ind. 2017). "When interpreting a statute, our primary goal is to fulfill the legislature's intent." *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016). We start with the text of the statute, giving words their plain meaning. *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1196 (Ind. 2016); *see also* I.C. § 1-1-4-1(1) ("Words and phrases shall be taken in their plain, or ordinary and usual, sense."). Indeed, "[t]he best evidence of [legislative] intent is the language of the statute itself." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). Where the statute is ambiguous, we "turn to our canons of statutory construction" and seek "to resolve the ambiguity in the manner most consistent with the discernible legislative intent." *Consumer Attorney Servs., P.A. v. State*, No. 49S05-1703-PL-161, slip op. at 5 (Ind. Mar. 21, 2017); *see also Day*, 57 N.E.3d at 813.

[22] However, before applying any rules of construction, we must first "determine whether the Legislature has spoken clearly and unambiguously on the point in question." *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Id.* It is only when there is ambiguity—"when a statute is susceptible to more than one interpretation"—that we apply other canons of construction. *Id.*

[23] The Jenners argue that the trial court erroneously interpreted the tax-sale statutes because it did not afford the Jenners *bona fide* purchaser status for

purposes of the notice requirements of Section 6-1.1-25-4.5. The title conveyed by a tax deed may be defeated if the notices required by Section 6-1.1-25-4.5(a) "were not in substantial compliance with the manner prescribed" by statute. I.C. § 6-1.1-25-16(7). As to which parties may be entitled to notice, our statutes provide:

> Except as provided in subsection (d), a purchaser or the purchaser's assignee is entitled to a tax deed to the property that was sold only if:
>
> ***
>
> (3) not later than six (6) months after the date of the sale:
>
> (A) the purchaser or the purchaser's assignee…
>
> gives notice of the sale to the owner of record at the time of the sale and any person with a substantial property interest of public record in the tract or item of real property.

Ind. Code § 6-1.1-25-4.5(a). As used in the statute, "a substantial property interest of public record" is defined to mean an "interest in a tract possessed by a person and recorded in the office of a county recorder or available for public inspection in the office of a circuit court clerk no later than the hour and date the [tax] sale is scheduled to commence." I.C. § 6-1.1-24-1.9. Regarding parties in possession of land who have not recorded their interest, the statute provides, "The notice [to be sent to other interest-holders] under this section … [is] not required for persons in possession not shown in the public records."

I.C. § 6-1.1-25-4.5(i). The statute does not identify a tax-sale purchaser as holding status equivalent to a *bona fide* purchaser for value, and does not state that a tax-sale purchaser need satisfy only the limited requirements applicable to a *bona fide* purchaser for value.

[24] The Jenners notified all parties whose interests were recorded in the chain of title for the property—that is, they provided notice to the same extent to which *bona fide* purchasers of land for value are considered to have notice of prior interests. The Jenners acknowledge that they were not in fact *bona fide* purchasers, but suggest that it is reasonable they be afforded that treatment, and thus request that their notice obligation under the tax-sale statutes be construed in this manner.

[25] The General Assembly spoke clearly and unambiguously in the language of Subsection 6-1.1-25-4.5(a). Our Legislature stated that a party seeking a tax deed must provide notice to "*any* person with a substantial property interest of public record" (emphasis added). "Any" means exactly what it says: "one indifferently out of more than two"; "one, some, or all indiscriminately of whatever quantity"; "one, no matter what one." Any, *Webster's Third New International Dictionary of the English Language Unabridged* (2002).

[26] The plain language of the notice provisions of the tax-sale statutes is dispositive here. The notice provisions make clear that the Jenners were required to provide notice to Crown Castle: notice must be provided to *any* person who holds a substantial interest of public record. *See* I.C. § 6-1.1-25-4.5(a). The

statute makes no provision for *bona fide* purchaser treatment of a tax deed petitioner, and makes no allowance for the failure of a tax-sale purchaser to find a recorded interest that lies outside the chain of title. Nor does the statute contemplate a hierarchy of recorded interests, such that some property interests are somehow "more" or "really" recorded and thus deserving of notice, whereas others are not. *See* I.C. § 6-1.1-24-1.9.

[27] Indeed, that the Legislature meant "any" to mean "all" and "every" here, without regard to whether the property interest was recorded within a parcel of land's chain of title, is underscored by the Legislature's drafting of the tax-sale statute without using the phrase "chain of title." The Indiana General Assembly has used exactly that phrase in the marketable title statute, I.C. § 32-20-3-1, and this Court has recognized that one effect of the marketable title statute is that competing chains of title may result in the supersession of one line of property interests over another. *See*, *e.g.*, *Roberts v. Feitz*, 933 N.E.2d 466, 476-78 (Ind. Ct. App. 2010) (concluding that a party's title was superior to an older, parallel chain of title, based in part upon the precision of the legal description of the land).

[28] Yet the General Assembly did not use "chain of title" in the tax-sale statute. The Legislature crafted the statute to require that tax sale purchasers provide notice to *any* person with a substantial, publicly recorded interest as that is defined in Section 6-1.1-24-1.9. This requirement reflects the very different status of a tax-sale purchaser vis-à-vis a *bona fide* purchaser for value, is

consonant with the speculative nature of the market created by the tax-sale statutory scheme, and comports with Indiana law holding forfeiture in disfavor.

[29] The Jenners note that a requirement of notice to any person with a substantial interest in the property of public record places a significant burden upon tax-sale purchasers: if notice must be provided to *any* person with a substantial property interest of public record whether the person's interest lies inside or outside the chain of title, then tax-sale purchasers must search every document in the recorder's office to be sure that they had provided notice to every person with a recorded interest. Yet a tax-sale purchase is a gamble, and, given the ante i.e. the low purchase price at a tax sale—often just pennies on the dollar relative to the fair market value of a subject property—the Legislature balanced the tax-sale purchaser's investment against the risk of a forfeiture by the existing interest holders. The Legislature thus intended to impose a greater burden upon tax-sale purchasers, thereby safeguarding to a significant degree existing property owners' rights to their land. Requiring a tax-sale purchaser to search outside the chain of title—even if it means searching thousands of records in the county recorder's office—is one of the safeguards created by the statute.

[30] Accordingly, there was no abuse of discretion in the trial court's conclusion that the statute required the Jenners' tax deed be declared void, and thus there was no error in the trial court's decision to grant Crown Castle's motion to set aside the judgment.

# Whither Notice?

[31] The plain language of the tax-sale statute is sufficient on its own to resolve this appeal. But because the trial court also held that the Jenners were on inquiry notice of Crown Castle's interest, a matter that seems likely to recur in future litigation, this facet of the trial court's order will also be addressed.

[32] The Jenners contend that the trial court abused its discretion when it found that they were on inquiry notice, by virtue of a sign posted on a fence surrounding the cellular tower on the property, of Crown Castle's recorded interest in the property. The trial court erred on this point, because holding that the Jenners were somehow required to make a personal, visual inspection of the land runs counter to the provisions of the tax-sale statute.

[33] The statute provides, "The notice [to be sent to other interest-holders] under this section … [is] not required for persons in possession not shown in the public records." I.C. § 6-1.1-25-4.5(i). That is, the tax-sale statute exposes tax-sale purchasers to challenges from parties with recorded claims to the property—but there is no notice requirement to those who possess the property without a recorded interest. The tax-sale statutes do not require notice to parties in physical possession *unless* those parties hold a recorded interest in the land.

[34] Thus, imputing an inspection requirement where there is no notice requirement creates a legal requirement that is not present in the statute. It also runs counter to another of the goals of the tax-sale statute: to expedite the payment of past-

due taxes, allowing Indiana's state and local governments to collect money they are owed and, presumably, to recommence collecting property tax on a given parcel. The plain language of the statute precludes the creation of an inspection requirement because the statute expressly excludes from the tax-sale purchaser's duties the necessity of providing notice to parties in possession with unrecorded interests—that is, parties whose interest in the land can be discovered *only* by a physical inspection.

[35] Simply put, whether a tax-sale purchaser has notice of a physical occupant of the land is beside the point in this case. The statute delineates the extent of a tax-sale purchaser's obligation to provide notice to other interest-holders in the property. In doing so, the statute expressly declines to impose a requirement to notify parties in possession without a substantial interest of public record. Neither this court nor the trial court are in positions to impose an inspection requirement upon tax-sale purchasers who, as the Jenners note, may be trespassing upon the land prior to the issuance of a tax deed. To the extent the trial court's order would impose such a requirement, that construction of the statute was in error.

# Conclusion

[36] Because Crown Castle satisfied the statutory definition of a person with a substantial interest of public record in the property, it was entitled to notice under our tax-sale statutes, and the trial court did not err when it concluded that the Jenners' failure to provide notice of their tax-deed petition required that the

tax deed be declared void. There is, however, no requirement for inspection inherent in the statute, and thus the trial court erred when it concluded that the Jenners were on inquiry notice of Crown Castle's interest. The trial court did not abuse its discretion when it granted Crown Castle's motion for relief from judgment with respect to the issuance of the Jenners' tax deed.

[37] Affirmed.

Vaidik, C.J., concurring in result with separate opinion.
Robb, J., dissenting with separate opinion.

ATTORNEY FOR APPELLANTS

Jon L. Orlosky
Muncie, Indiana

ATTORNEYS FOR APPELLEE
CROWN CASTLE SOUTH LLC

Christopher S. Roberge
Elizabeth A. Roberge
Roberge Law
Carmel, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

David L. Jenner and Vickie
Jenner,

*Appellant-Petitioners,*

v.

Bloomington Cellular Services,
Inc.,

*Appellee-Respondent,*

Crown Castle South LLC,

*Appellee-Intervenor*

June 12, 2017

Court of Appeals Case No.
53A05-1606-MI-1415

Appeal from the Monroe Circuit
Court

The Honorable E. Michael Hoff,
Judge

Trial Court Cause No.
53C01-1409-MI-1703

**Vaidik, Chief Judge, concurring in result.**

I join Judge Bailey in voting to affirm the trial court's decision, but I respectfully disagree with his interpretation of Indiana Code sections 6-1.1-25-4.5 and -4.6.

Those statutes require a tax-sale purchaser seeking a tax deed to provide notice to "the owner of record at the time of the sale and any person with a substantial property interest of public record in the tract or item of real property." Judge Bailey reads this language to require notice to any person who has recorded an interest in the subject property, even if the interest is recorded "outside the chain of title" and the only way for the tax-sale purchaser to discover the interest at the recorder's office is to "search **every** document" in the office. Slip op. at 15 (emphasis added). He concludes that this is a "safeguard" for existing property owners, intentionally created by the General Assembly. *Id*. I cannot agree.

"The purpose of the tax sale statute is obvious—to collect delinquent property taxes." *Ransburg v. Kirk*, 509 N.E.2d 867, 876 (Ind. Ct. App. 1987), *reh'g denied*. But if the only way for tax-sale purchasers to achieve certainty and predictability is to carefully review every single document in the relevant recorder's office, tax-sale purchases will become much more risky and expensive, and the collection of delinquent taxes will become much more difficult. Therefore, I simply cannot conclude that the legislature, which is well aware of the volume of documents on file at the recorder's offices in this state, intended to establish such a requirement.

Instead, I interpret the statutes, as does Judge Robb, to mean that the holder of a recorded interest is entitled to notice only if the tax-sale purchaser knows of the recording or would become aware of it in the exercise of reasonable diligence. Reasonable diligence includes performing all available index and electronic searches for recorded documents (using property-specific and party-specific search criteria) and conducting an in-person visit to the property. If the visit to the property provides the tax-sale purchaser with new information (such as names of potential interest holders), additional searching for recorded documents may be warranted.

Here, there is no evidence that the Jenners had independent, existing knowledge of the recording of Crown Castle's interests. Moreover, Crown Castle concedes that the recordings were not discoverable—at least at the times relevant to this case—using the available search options through the Monroe County Recorder's Office. The attorney for the title company hired by the Jenners signed an affidavit indicating that a name search was the company's only option, and the only name available to the title company (the only relevant name in the "chain of title") was Bloomington Cellular. Of course, advances in recording, recordkeeping, and search technology have made it possible in many counties to find recorded interests in a particular tract—even those recorded "outside" the traditional chain of title—simply by using the legal description, the address, or the Tax/Parcel ID. Indeed, a search today for the Property's Tax/Parcel ID on the Doxpop database for Monroe County quickly leads one to Crown Castle's recorded interest. However, because the title company was

unable to find Crown Castle's recordings, and because Crown Castle does not contend that the title company should have been able to do so, we must assume that, back in 2014, the only way to search for the recordings was a traditional chain-of-title search by name.

[6] That leaves an in-person visit to the Property, which is where I part ways with both of my colleagues. On this point, the trial court ruled as follows:

> In the present case, a physical view of the Vernal Pike Property would have disclosed Crown Castle's interests in the property. Consequently, knowledge of the cell tower and signage was imputed to [the Jenners] at the time of the tax sale. The cell tower and signage were sufficient to disclose Crown Castle had a substantial property interest in the property. **And, with that knowledge, the Jenners could have searched the Monroe County Recorder's public records available for public inspection through the Internet on DoxPop where they are maintained for the Monroe County Recorder. Indeed, a simple name search for Crown Castle would have revealed Crown Castle's Lease and License.**

Appellants's App. Vol. II p. 28 (emphasis added). In short, the trial court found that a visit to the Property would have revealed Crown Castle's name and that a follow-up recorder's office search for Crown Castle's name would have revealed its recordings. I defer to the trial court's factual findings in this regard, and I vote to affirm its decision on this ground.[2]

---

[2] In disagreeing with the trial court on this issue, Judge Bailey reads the trial court's order as concluding that Crown Castle would have been entitled to notice simply by virtue of its possession of the property, as

evidenced by the sign, even if its interest had been **unrecorded**. *See* slip op. at 16 ("[T]here is no notice requirement to those who possess the property without a recorded interest. The tax-sale statutes do not require notice to parties in physical possession unless those parties hold a recorded interest in the land.") & 17 ("[T]he [tax-sale] statute expressly excludes from the tax-sale purchaser's duties the necessity of providing notice to parties in possession with unrecorded interests[.]"). That is not how I read the trial court's order. As I see things, the trial court ruled that Crown Castle was entitled to notice precisely because its interest **was** recorded—a recording the Jenners would have discovered if they had looked at the sign and then gone to the recorder's office and conducted a search for the name on the sign.

| | |
|---|---|
| David L. Jenner and Vickie Jenner, | Court of Appeals Case No. 53A05-1606-MI-1415 |
| *Appellants-Petitioners,* | |
| v. | |
| Bloomington Cellular Services, Inc., | |
| *Appellee-Respondent*, | |
| and | |
| Crown Castle South LLC, | |
| *Appellee-Intervenor.* | |

**Robb, Judge, dissenting.**

[7] I agree with Judge Bailey that the sign posted on the property did not put the Jenners on inquiry notice of Crown Castle's interest and therefore I agree the Jenners' tax deed is not void on this basis.[3] *See* slip op. at ¶ 35. For this reason,

---

[3] Judge Vaidik would affirm on the basis the Jenners should have known to search Crown Castle's interest due to the sign. Regardless of whether the statute imposes an inspection requirement, I do not believe the evidence adduced in this case supports the notion that even if the Jenners had inspected the property, the sign

it is necessary for me to consider whether the Jenners gave the appropriate notice of their tax sale purchase, and on that point, I disagree with Judge Bailey that the Jenners' failure to uncover Crown Castle's interest and provide it notice defeats their tax deed.

[8] I acknowledge Subsection 6-1.1-45-4.5(a)(3) says the tax sale purchaser must give notice to "any person with a substantial property interest of public record," and that on its face, this would require notice to Crown Castle in this case. As Judge Bailey says, however, a strict interpretation of the statute could require "searching thousands of records in the county recorder's office" in order to comply. Slip op. at ¶ 29. The statutory language itself may be straightforward, but the manner of complying under this interpretation is anything but. Even accepting that a tax sale purchase is a "gamble," *see id.*, imposing a strict interpretation of the statute would mean that successfully obtaining a tax deed is all luck and no skill. I find it difficult to accept the Legislature would have drafted a statute imposing a basically impossible requirement. This is especially so considering section 6-1.1-25-16(7) says that a person may defeat the title conveyed by a tax deed only if, among other things, the required notices were not in *substantial compliance* with the statutory requirements of section 6-1.1-25-4.5. For this reason alone, I would interpret the statute to require tax sale

was sufficient to put them on notice that additional entities beyond the chain of title might be entitled to statutory notice of the tax sale.

purchasers to provide notice to persons who they know or with the exercise of reasonable diligence should have known have a substantial property interest.

[9]     As to Judge Vaidik's point that advances in technology have in some circumstances made a record search easier, I acknowledge this is true and further acknowledge that if the Jenners purchased the property at a tax sale today, they would be expected to provide notice to Crown Castle. However, when the statute was enacted in 1989, searching documents online was not possible. What's more, as it stands now, searching documents online may not be possible in every county, or it may be possible only in a limited way. This further supports my view that it is unlikely the Legislature enacted this statute with the intent for a tax sale purchaser to have to search every record in the recorder's office to assure he or she has found every recorded property interest. Returning to Judge Bailey's analogy of purchasing at a tax sale to gambling, I do not necessarily disagree that tax sale purchasers are taking a risk. But according to Judge Bailey's interpretation of the statute, tax sale purchasers are taking an even bigger risk than a gambler walking into a casino. In a casino, the rules are the same at every table for any given game. In this "game," however, the rules are different depending on the county in which the property is located.[4] Thus, tax sale purchasers are not taking a gamble that they followed

---

[4] Recorded documents from thirty-nine counties, including Monroe, are available on Doxpop, and a search by Tax/Parcel ID is possible for thirty-eight of those counties. Indiana counties use court records services other than Doxpop, so it is possible a search by Tax/Parcel ID may be conducted online in more than the thirty-eight counties allowing such a search through Doxpop. However, it does not appear possible at all in, for example, Hamilton County, which uses Doxpop but does not allow searching by Tax/Parcel ID, and

the tax sale statutes correctly; they are taking a gamble that they *can* follow the statutes. As Judge Vaidik points out, that uncertainty would defeat the purpose of the statute – to collect delinquent taxes.

[10] There will likely be some time in the future when the records in every county will be on equal footing and even documents recorded outside the chain of title will reliably and easily be available to tax sale purchasers. Until such time, however, I do not believe the Legislature intended what Judge Bailey's opinion says – that even when a title company does not find a recorded interest, an average citizen is nonetheless expected to in order to procure a tax deed. Therefore, I disagree with the ultimate conclusion of the majority—reached through different means, but nonetheless agreeing on the outcome—that the trial court should be affirmed and the tax deed set aside.

[11] I would reverse the trial court's judgment granting Crown Castle's motion for relief from judgment.

---

which does not seem to have any other means of conducting such a search. Other counties have varying access to and means of conducting online searches.