

FILED

Jul 31 2018, 8:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

A.J. (Andrew) Patrick
Anderson, Indiana

ATTORNEYS FOR APPELLEES-
INTERVENORS MADISON
COUNTY AUDITOR AND
MADISON COUNTY TREASURER

Jeffrey K. Graham
John E. Woods
Graham, Regnier, Farrer & Wilson
P.C.
Elwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Picket Fence Property Company,
and Andrew Patrick,[1]

*Appellant-Plaintiff,*

v.

Chris Davis,[2]

*Appellee-Defendant,*

and

July 31, 2018

Court of Appeals Case No.
48A02-1710-MI-2493

Appeal from the
Madison Circuit Court

The Honorable
Carl Van Dorn, Senior Judge

Trial Court Cause No.
48C03-1608-MI-660

---

[1] Andrew Patrick claims to be the successor-in-interest to original plaintiff Picket Fence Property Company, and this appears to not be in dispute.

[2] Defendant Chris Davis does not participate in this appeal, but we include him in the caption pursuant to Indiana Appellate Rule 17(A), which provides that a party in the trial court shall be a party on appeal.

Madison County Auditor and
Madison County Treasurer,

*Appellees-Intervenors*.

**Kirsch, Judge.**

[1] Picket Fence Property Company ("Picket Fence") successfully bid upon a certain property at a Madison County Commissioners' Certificate Sale and, thereafter, petitioned the Madison Circuit Court ("the trial court") for issuance of a tax deed for the property. The trial court issued an order that, in addition to granting the request for a tax deed, also stated that certain specified property taxes were waived – that is, not owed by the purchaser, Picket Fence. The Madison County Auditor and Madison County Treasurer intervened and sought a corrected order with regard to the property taxes owed by Picket Fence, and the trial court granted the request and issued two orders. Andrew Patrick ("Patrick"), as a successor to Picket Fence, filed a motion to compel, asserting that the Madison County Auditor needed to remove additional property taxes from his obligation, and the trial court denied Patrick's motion. Patrick appeals and raises four issues that we consolidate and restate as: whether the trial court erred when it determined that the Madison County Auditor and Madison County Treasurer were in compliance with the trial

court's orders, which determined that Patrick owed taxes that accrued in 2015, the year of the Treasurer's Tax Sale, including those that accrued between the October 2015 Treasurer's Tax Sale and the April 2016 Commissioners' Certificate Sale.

[2] Asserting that Patrick's appeal is frivolous and in bad faith, the Madison County Auditor and Madison County Treasurer ask us to award appellate attorney's fees.

[3] We affirm.

## Facts and Procedural History

[4] In 2015, the Madison County Treasurer compiled a list of properties that were delinquent in the payment of real estate taxes, including a parcel commonly known as 104 Morton Street, Anderson, Indiana ("the Property"), and, on October 26, 2015, Madison County conducted a Treasurer's Tax Sale ("the October 2015 Tax Sale") for various parcels, including the Property. *Appellant's App. Vol. II* at 11. The Property did not receive the statutory minimum bid and went unsold at the October 2015 Tax Sale. As a result, the Madison County Board of Commissioners ("Board of Commissioners") acquired a lien on the Property, pursuant to Indiana Code section 6-1.1-24-6, in the amount of the statutory minimum sale price.[3] Thereafter, the Board of Commissioners held a

---

[3] Indiana Code section 6-1.1-24-5(e) provides, in relevant part, that a tract of real property may not be sold for an amount which is less than the sum of:

Commissioners' Certificate Sale on April 8, 2016 ("the April 2016 Certificate Sale"), pursuant to Indiana Code section 6-1.1-24-6.1, and offered to sell, among other parcels, the county's interest in the Property.

[5]     Picket Fence, as the successful bidder for the Property at the April 2016 Certificate Sale, purchased a certificate for the Property. After providing the required statutory notices to the property owner of record for the Property, Picket Fence filed a petition on August 22, 2016 with the trial court requesting issuance of a tax deed on the Property.[4] *Appellees' App.* at 2-3. The trial court granted Picket Fence's petition and issued an order on September 26, 2016 ("the September 2016 Order"), directing the Madison County Auditor to execute and deliver a tax deed to Picket Fence. The September 2016 Order also included the following language concerning property taxes, which ultimately resulted in the present appeal:

------

(1) the delinquent taxes and special assessments on each tract or item of real property;

(2) *the taxes* and special assessments on each tract or item of real property *that are due and payable in the year of the sale,* regardless of whether the taxes and special assessments are delinquent;

(3) all penalties which are due on the delinquencies;

(4) the amount prescribed by section 2(b)(3)(D) of this chapter reflecting the costs incurred by the county due to the sale;

(5) any unpaid costs which are due under section 2(c) of this chapter from a prior tax sale; and

(6) other reasonable expenses of collection, including title search expenses, uniform commercial code expenses, and reasonable attorney's fees incurred by the date of the sale. (Emphasis added).

[4] Picket Fence requested a tax deed pursuant to Indiana Code section 6-1.1-25-4.6, which provides that if the property owner of record does not redeem the property within the required time, the purchaser may petition the trial court for issuance of a tax deed.

> IT IS FURTHER ORDERED that the 2015 Spring and 2015
> Fall property taxes, payable Spring and Fall 2016, and the Spring
> 2016 property taxes, payable Spring 2017, are hereby waived.[5]

*Appellant's App*. at 7.

[6] On October 26, 2016, the Madison County Auditor and Madison County Treasurer (together "Madison County") filed a motion to intervene and to correct errors, asserting that the September 2016 Order was in error in its determination of taxes because it (1) "extinguishes . . . taxes and special assessments that accrued subsequent to the October 2015 Tax Sale" and (2) "also impermissibly orders Madison County to waive taxes which are not yet payable, contrary to Indiana's statutes."[6] *Appellant's App. Vol. II* at 8-9. On February 21, 2017, after becoming aware of numerous other properties similarly situated to 104 Morton Street that were purchased by Picket Fence at the April 2016 Certificate Sale, Madison County filed a motion to consolidate, intervene, and for relief from orders, seeking to consolidate several cause numbers with the trial court's 104 Morton Street case and also re-asserting that relief from the September 2016 Order was appropriate because the order, which relieved Picket Fence of paying some taxes, "infringe(s) on Madison County's statutory duties" to determine and collect property taxes and "will unnecessarily burden

---

[5] We observe the general principle that in Indiana real estate taxes are assessed for a year and are paid in two installments, on May 10 and November 10, of the following year. Ind. Code § 6-1.1-22-9(a).

[6] We note that, from the record before us, there appears to be no dispute between the parties that Patrick is entitled to a tax deed on the property.

Madison County and the taxpayers of Madison County." *Id*. at 4-5. Madison County asked the trial court to correct its September 2016 order and clarify that, pursuant to statute, Picket Fence was responsible for taxes accruing on and after January 2015, the year of the Treasurer's Tax Sale. *Id*. at 16 (arguing that "when the 2015 pay 2016 real estate property taxes became due, those amounts are due and owing by the Certificate Purchaser").

[7] Following a February 27, 2017 hearing, the trial court issued an order on March 31, 2017 ("the March 31 Order"), stating that the matter was governed by Indiana Code section 6-1.1-25-4(j) and that Madison County had complied with that statute's requirements while determining the taxes owed. More specifically, the March 31 Order stated, in relevant part:

> 3. The law describes what is to be removed from the tax duplicate[7] before a deed is issued to a purchaser of a certificate of sale[.] . . . [Indiana Code section] 6-1.1-25-4 directs that the taxes, special assessments, interest[,] penalties and costs remaining due be removed from the tax duplicate and further directs that it be calculated as a mathematical number as the difference between:
>
> > a. The last minimum bid determined for the last tax sale plus any penalty associated with a delinquency not due at the tax

---

[7] The "tax duplicate" refers to the county's roll of property taxes. *See* Ind. Code § 6-1.1-22-3 (directing the auditor of each county to prepare a roll of property taxes payable in that year for the county, and "This roll shall be known as the 'tax duplicate'" and shall show, among other things, the value of all the assessed property in the county and the person liable for the taxes on the assessed property).

sale but due before the certificate sale. Those two added together and

       b. The amount paid for the certificate of sale subtracted therefrom.

4. The result of that mathematical problem is the amount the new owner does not have to pay. Any later taxes would be payable by the new owner.

5. The statute setting the parts of the minimum bid (6-1.1-24-5(e)) include:

       (1) The delinquent taxes and special assessments on each tract or item of real property;

       (2) The taxes and special assessments on each tract or item of real property that are due and payable in the year of the sale, regardless of whether the taxes and special assessments are delinquent.

       (3) All penalties which are due on the delinquencies;

       (4) Three other items of cost and expenses of sale[.]

6. *An order for a new deed in this case should indicate the taxes removed by the last minimum bid for the tax sale are not payable by the new owner.*

7. *That any tax due and payable in a year after the tax sale herein should be payable by the new owner[.]*

*Appellees' App. Vol. II* at 11-12 (emphasis added).

In April 2017, Madison County filed a Motion to Clarify Court's Order, advising the trial court that the parties were "unable to reach an agreement on the [e]ffect of the Court's March 31, 2017 Order" and asking the trial court to clarify "as the parties disagree on what effect the Court's Order has on any delinquent taxes on the parcels at issue in this action." *Id.* at 13-14. On April 17, 2017, the trial court conducted a hearing and thereafter issued a May 23, 2017 Clarification Order ("the May 23 Order"), which confirmed its ruling in the March 31 Order and stated in relevant part:

1. The question herein is determined by Indiana Code 6-1.1-25-4(j).

2. It states when a deed is issued to a purchaser of a certificate of sale, the auditor shall remove from the tax duplicate the taxes, special assessments, interest, penalties, and costs remaining due.

3. That section continues by removing from the tax duplicate the tax amount contained in the last minimum bid for the last tax sale as well as certain penalties.

4. Indiana Code 6-1.1-24-5(e) defines the tax parts of a minimum bid as

    a) The delinquent taxes and special assessments on each tract or item of real property;

    b) The taxes and special assessments on each tract or item of real property that are due and payable in the year of the sale, regardless of whether the taxes and special assessments are delinquent;

c) All penalties which are due on the delinquencies;

5. *Any tax not included in the minimum bid taxes are left for the purchaser of a certificate of sale to pay.*

*Id.* at 19 (emphasis added).

[9]     Sometime in 2017, Patrick asserted a successor interest to Picket Fence, and, on June 22, 2017, Patrick filed his Motion to Compel,[8] asking the trial court to compel the Madison County Auditor to remove all taxes, special assessments, interest, and penalties that occurred before the April 2016 Certificate Sale, including (1) Spring 2015/due Spring 2016 taxes and (2) Fall 2015/due Fall 2016 taxes.[9] *Appellees' App*. at 20-22. The trial court conducted a hearing on September 11, 2017. At the hearing, counsel for Madison County argued that, pursuant to Indiana Code section 6-1.1-25-4(f), and consistent with the trial court's March 31 and May 23 Orders, Patrick was responsible for the taxes that accrued in the year of the tax sale, including those accruing *after* the October 2015 Tax Sale and *before* the April 2016 Certificate Sale, which Patrick was seeking to have removed from his tax obligation. *Tr. Vol. II* at 6-9, 13-14. Indiana Code section 6-1.1-25-4(f) states, in part:

---

[8] It is not clear from the record as to exactly when Patrick obtained a successor interest in Picket Fence.

[9] We note that Patrick did not challenge other aspects of the March 31 Order that determined that (1) Madison County was entitled to intervene and (2) Madison County's request to consolidate should be granted.

(f) A tax deed executed under this chapter vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances *created or suffered* **before or after the tax sale** *except* those liens granted priority under federal law and *the lien of the state or a political subdivision for taxes and special assessments* **which accrue subsequent to the sale**[.] (Emphasis added.)

[10] Madison County's position was that the word "sale" in the statute's "subsequent to the sale" phrase refers to the Treasurer's Tax Sale, not the later Commissioners' Certificate Sale, and therefore, Patrick was responsible for the taxes that accrued *after* the October 2015 Tax Sale and *before* the April 2016 Certificate Sale. *Tr. Vol. II* at 6-8, 13-14. Counsel for Madison County summarized the issue:

> We're arguing about . . . What does sale mean? Does sale mean tax sale in the October or does it mean the April commissioner's sale and if it means the tax sale back in October then the county . . . has complied with your orders. If it means what Mr. Patrick . . . argued[,] then the county has not. So that in my opinion that's the stiletto by which you can solve this problem and decide whether or not the county has complied with these orders[,] by determining what sale means in 6-1.1-25-4 sub f.

*Id.* at 16-17.

[11] At the hearing, Madison County called as a witness Matthew Portner ("Portner"), who was general counsel at SRI Incorporated, a company that "[per]forms tax sales across Indiana[,]" in eighty-five of Indiana's ninety-two counties *Id.* at 30. His responsibilities included providing guidance to counties

and keeping counties in compliance with the statutes. Portner provided an overview of the general tax sale process as follows:

> So when the treasurer['s tax] sale occurs[,] if nobody purchases the lien[,] then by statute the auditor issues a certificate to the county commissioner. . . . And then that's when the county commissioners can take that certificate and sell it at a cheaper amount that['s] below the statutory minimum bid at the original [tax] sale. . . . And the difference between those two amounts is what should have been removed [from the tax rolls]. That's the only portion that should be removed. If there's *taxes that become due and payable the next spring installment[,] those are required by statute to be paid by the certificate purchaser.*

*Id.* at 14-15 (emphasis added). Portner said that "starting in January 2016 and moving forward [Patrick]'s going to be responsible to pay everything that becomes due and payable." *Id*. at 32-33. Portner testified that he had reviewed the trial court's March 31 Order and May 23 Clarification Order, and he opined that Madison County was in compliance with those Orders. *Id*. at 31.

[12] Madison County also called as a witness, Todd Culp ("Culp"), the Chief Deputy Auditor of Madison County at the time. Culp said that "the last installment that would have been wiped is the one that was due and payable in November 2015[,]" meaning that the last taxes that were removed from the tax duplicate – and for which Patrick was not responsible – were those that accrued in 2014 (due and payable in November 2015). *Id*. at 38. Culp explained that, when a person purchases a property at a certificate sale, as Patrick did, the county auditor is directed to remove from the tax duplicate certain taxes,

specifically those that are due and payable in the year of the tax sale, pursuant to another subjection of Indiana Code section 6-1.1-25-4. Culp explained:

> [Indiana Code section] 6-1.1-25-4 directs that the taxes special assessments, interests, and penalties and costs remaining due be removed from the tax duplicate and further directs that it be calculated as a mathematical number is a difference between the last minimum bid determined for the last tax sale plus any penalties associated with the delinquency not due at the tax sale but due before the certificate sale. Those two (2) added together and the amount paid for the certificate sale subtracted there from. The result of that mathematical problem is the amount that the new owner does not have to pay. So he's bought the certificate at certificate sale, it points back to the treasurer sale in October and lists that minimum bid as the taxes that he does not have to pay so we have complied with the court's order and removed those from the tax duplicate.
>
> . . . .
>
> [T]he entire *tax bill that's due in that year* is included on the tax sale in October, including the November installment *so those are all removed from the record already*.[10]

*Id.* at 20-22 (emphasis added). Culp testified that he had reviewed the trial court's March 31 Order and the May 23 Order, and he confirmed that Madison County had complied with the trial court's orders. *Id.* at 20.

---

[10] Portner, like Culp, provided testimony about the specific taxes that were properly removed by the auditor, explaining that "everything due and payable within the year of the sale . . . is part of the minimum bid" and gets removed, and that the Madison County Auditor did so in this case. *Id.* at 35-36.

[13] On October 9, 2017, the trial court issued an Order denying Patrick's Motion to Compel and finding that Madison County was in compliance with the trial court's previous orders of March 31, 2017 and May 23, 2017. *Appellant's App. Vol. II* at 21. Patrick now appeals.

## Discussion and Decision

[14] At the outset, we observe that Patrick has chosen to proceed pro se. It is well settled that pro se litigants are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). This means that pro se litigants are bound to follow the established rules of procedure and must be prepared to accept the consequences of their failure to do so. *Id*. at 983-84. These consequences include waiver for failure to present cogent argument on appeal. *Id.* at 984. While we prefer to decide issues on the merits, where the appellant's noncompliance with appellate rules is so substantial as to impede our consideration of the issues, we may deem the alleged errors waived. *Id*. "We will not become an 'advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood.'" *Id* (quoting *Perry v. Anonymous Physician 1,* 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied* 136 S. Ct. 227 (2015)).

[15] Initially, we note that Patrick's appeal contains a number of procedural and substantive deficiencies. Appellate Rule 50(A)(2)(b) requires that an Appellant's Appendix "shall contain the appealed judgment or Order, including any written opinion, memorandum of decision, or findings of fact and

conclusions thereon relating to the issues raised on appeal." Here, Patrick includes the October 9 Order, from which he appeals, but that October 9 Order was a one-sentence order that summarily denied Patrick's request to compel Madison County to remove additional taxes from the tax duplicate. The October 9 Order was a determination that the trial court's March 31 and May 23 Orders were correct, and those March and May orders are necessary to our determination of Patrick's claim, but neither is included in Patrick's Appendix, although Madison County provided the orders in their Appellees' Appendix. There are also instances where Patrick provides only a partial document in his Appendix, and the table of contents to his Appendix also refers to one or more documents that are not in it. *See Appellant's App. Vol. I* at 2 (citing to Motion to Compel at 19, but that motion is not at that page or otherwise included in Appendix); *Appellant's App. Vol. II* at 10 (providing only part of Madison County's Motion to Consolidate, Intervene, and Relief from Orders).

[16] As for his appellate brief, Patrick's statement of the issues fails to comply with Indiana Appellate Rule 46(A)(4), as his statement is unclear, making it difficult to determine the exact issues before this court. Indiana Appellate Rule 46(A)(6) provides, in part, that the appellant's statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony"; however, Patrick's statement of facts, for the most part, recites quotes of argument made or testimony presented at the September 11, 2017 hearing, and his facts section cites to a standard of review, which is not proper for that section of the brief. Indiana Appellate Rule 46(A)(8) addresses the

requirements for the argument section of an appellant's brief and states in pertinent part that the argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning, and each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on. In his argument section, Patrick devotes significant text to restating or quoting what Madison County argued at a hearing or in pleadings before the trial court, rather than developing coherent arguments in support of his own position. Our review of Patrick's claim or claims is impeded by the fact that his arguments are, in large part, too poorly developed or expressed to be understood.[11]

[17]  All of that being said, we prefer to decide cases on their merits, and thus we attempt to resolve the pending issues concerning the trial court's determination of the property taxes for which Patrick is responsible and Madison County's compliance with the relevant trial court orders.

---

[11] By way of example, the following is a paragraph from Patrick's Argument section, *Appellant's Br.* at 16:

> The original order could be interoperated [sic] as "sale" to mean execution of tax deed, and accrue to mean accrue, not due and payable; waving (Spring 15/pay16), (Fall 15/Pay16), and (Spring 16/Pay17). The final order essentially declared "sale" to mean the initial offering of sale, and *accrue* to mean *due and payable*, subsequent to the initial offering. Ordering, at its simplest, that (Spring 2015/pay 2016) taxes are to have accrue after October 2015; waving (Fall 2014/pay15), and prior. "Something is only worth what someone is willing to pay for it." (Publilius Syrus, 1st century BC).

# I. Appeal of October 9 Order

[18] Patrick challenges the trial court's October 9 Order determining that Madison County was in compliance with the trial court's March 31 and May 23 Orders concerning property taxes owed by Patrick on the Property. Here, the dispute began after the trial court's September 2016 Order, which waived – that is, found that Patrick was not responsible for – the following: (1) the 2015 spring taxes, due in May 2016; (2) the 2015 fall property taxes, due in November 2016; and (3) the 2016 spring property taxes, due in May 2017.[12] Madison County thereafter intervened and asked the trial court to correct its September 2016 Order and clarify that, pursuant to statute, Patrick was responsible for taxes accruing in the year of the Treasurer's Tax Sale and that his obligation was reduced only by a statutory mathematical formula involving the difference between the statutory tax sale minimum bid and the price paid for the certificate at the later April 2016 Certificate Sale. The trial court then issued the March 31 Order, which determined, in sum: (1) Patrick's claim was governed by Indiana Code section 6-1.1-25-4(j); (2) he was responsible for taxes due and payable in the year of the Tax Sale, here 2015, reduced only by the difference between the last minimum bid and the amount paid for the certificate; (3) "the taxes removed by the last minimum bid for the tax sale are not payable by the new

---

[12] We note that, on appeal, Patrick does not appear to dispute that he owes the taxes that accrued *after* he purchased the certificate at the April 2016 Commissioners' Certificate Sale.

owner" and (4) "any tax due and payable in a year after the tax sale herein should be payable by the new owner[.]" *Appellees' App. Vol. II* at 11-12.

[19] At Madison County's request for clarification, the May 23 Order confirmed the March 31 Order's determination and stated in relevant part: "Any tax not included in the minimum bid taxes are left for the purchaser of a certificate of sale to pay." *Id.* at 19. Patrick thereafter filed his motion to compel, asking that the trial court compel the Madison County Auditor to remove additional taxes from the tax duplicate, thereby continuing to claim that he did not owe the amount of taxes as calculated by the county. Following a September 2017 hearing, the trial court denied Patrick's motion, and it is from this denial that he now appeals.

[20] The trial court's decision was based upon its interpretation of one or more statutes. The interpretation of a statute is a question of law, a matter which we review *de novo. Hall v. Terry*, 837 N.E.2d 1095, 1098 (Ind. 2005) (citing *In re 2002 Lake Cnty. Tax Sale,* 818 N.E.2d 505, 507 (Ind. Ct. App. 2004)).

[21] Indiana Code section 6-1.1-25-4(f) ("Subsection f") addressing the issuance of tax deeds, states, in relevant part:

> (f) A tax deed executed under this chapter vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances *created or suffered* **before or after the tax sale** *except* those liens granted priority under federal law and *the lien of the state or a political subdivision for taxes and special assessments* **which accrue subsequent to the sale** and which are not removed under

subsection (e).  However, subject to subsection (g), the estate is subject to:

(1) all easements, covenants, declarations, and other deed restrictions shown by public records;

(2) laws, ordinances, and regulations concerning governmental police powers, including zoning, building, land use, improvements on the land, land division, and environmental protection; and

(3) liens and encumbrances created or suffered by the grantee.

(emphasis added).

[22] In finding that "any tax due and payable in a year after the tax sale herein should be payable by the new owner[,]" *Appellees' App. Vol. II* at 11-12, the trial court implicitly determined that "sale" – as used in Subsection f's phrase, "which accrue subsequent to the sale" – referred to the Tax Sale (in this case, the October 2015 Tax Sale) and not the later-held April 2016 Commissioners' Certificate Sale.  On appeal, Patrick claims that the trial court was in error because the word "sale" means the Commissioners' Certificate Sale, such that he only owes the taxes that accrued subsequent to the April 2016 Commissioners' Sale.  *Appellant's Br.* at 28.  We disagree.

[23] "When interpreting a statute, our primary goal is to fulfill the legislature's intent."  *Jenner v. Bloomington Cellular Servs., Inc.*, 77 N.E.3d 1232, 1238 (Ind. Ct. App. 2017), *trans. denied*.  We start with the text of the statute, giving words

their plain meaning.  *Id.*; *see also* Ind. Code § 1-1-4-1(1) ("Words and phrases shall be taken in their plain, or ordinary and usual, sense.").  "Indeed, '[t]he best evidence of [legislative] intent is the language of the statute itself.'"  *Jenner*, 77 N.E.3d at 1238 (quoting *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008)).

[24] Here, Subsection f provides that the recipient of a tax deed receives an estate in fee simple, free and clear of all liens and encumbrances "*created or suffered **before or after the tax sale** except . . . the lien of the state or a political subdivision for taxes and special assessments **which accrue subsequent to the sale**[.]*"  The second reference in the same sentence to "the sale" clearly refers back to the prior-mentioned "tax sale."  Based on the plain language of the statute, we find no support for Patrick's view that the second-referenced "sale" in the sentence means a Commissioners' Certificate Sale.

[25] A later subsection of the same statute further supports our determination. Indiana Code section 6-1.1-25-4(j) ("Subjection j") addresses the situation "[w]hen a deed is issued to a purchaser of a certificate of sale," as occurred in this case, and it directs the county auditor to remove some taxes from the tax duplicate.  Subjection j states:

> (j) When a deed is issued to a purchaser of a certificate of sale sold under IC 6-1.1-24-6.1, the county auditor shall, in the same manner that taxes are removed by certificate of error, remove from the tax duplicate the taxes, special assessments, interest, penalties, and costs remaining due as the difference between:

(1) the amount of:

> (A) the last minimum bid under IC 6-1.1-24-5[13]; plus

> (B) any penalty associated with a delinquency that was not due until after the date of the sale under IC 6-1.1-24-5 but is due before the issuance of the certificate of sale, with respect to taxes included in the minimum bid that were not due at the time of the sale under IC 6-1.1-24-5; and

(2) the amount paid for the certificate of sale.

Subsection (j)(1)(B) of this statute discusses the delinquency that was "not due *until after the date of the sale*" but is due "*before the issuance of the certificate of sale*." This language, which we note is used in the same sentence, purposefully distinguishes "the date of sale" from the "issuance of the certificate of sale," and, we find, reflects that "the date of sale" refers to the Tax Sale.

[26] Accordingly, we find that "subsequent to the sale" as used in Indiana Code section 6-1.1-45-4(f) means subsequent to the Tax Sale, not the later-held Certificate Sale; our determination is consistent with the trial court's March 31, May 23, and October 9 Orders, which found that "the taxes removed by the last

---

[13] Although we provided the statutory definition of "minimum bid" in Footnote 3, above, we note our agreement with Madison County's description: The minimum bid "is, effectively, the sum of all delinquent taxes, taxes due and payable in the year of the tax sale, and all penalties and costs associated with the sale." *Appellees' Br.* at 10.

minimum bid for the tax sale are not payable by [Patrick]" and "any tax due and payable in a year after the tax sale herein should be payable by [Patrick.]" *Appellees' App. Vol. II* at 11-12. The testimony of Culp and Portner further supports our statutory interpretation.

[27] Here, at the September 2017 hearing, Culp testified that "[i]n the last minimum bid[,] we've already taken off the tax bill between the tax sale and the commissioner's sale[,]" *Tr. Vol. II* at 24, such that the last tax installment that was "wiped is the one that was due and payable in November 2015" which would have been the taxes accruing in 2014 and payable in 2015. *Id.* at 38. This testimony reflects that taxes *due and payable* in 2015, the year of the Tax Sale, have been removed from the tax duplicates, and Patrick is not responsible for those taxes. *Id.* at 21-22 ("[T]he entire tax bill that's due in that year is included on the tax sale in October, including the November installment so those are all removed from the [tax] record already."). However, with regard to what *accrues* in 2015, Portner testified that "[a]nything [that] becomes due and payable after [January 1, 2016] is on the certificate purchaser to pay[,]" which means taxes accruing in Spring and Fall 2015, payable in 2016. That includes the taxes accruing after the October 2015 Tax Sale and before the April 2016 Certificate Sale. Both Culp and Portner testified that Madison County was in compliance with the trial court's March 31 and May 23 Orders. *Tr. Vol. II* at 20, 31.

Given the record before us and our *de novo* review of the trial court's interpretation of the statutes in question, we find no error with the trial court's decision to deny Patrick's motion to compel.

## II.   Appellate Attorney's Fees

Madison County asserts that Patrick's appeal was frivolous and in bad faith and asks us to award appellate attorney's fees.  Indiana Appellate Rule 66(E) provides, in pertinent part:  "The Court may assess damages if an appeal . . . is frivolous or in bad faith.  Damages shall be in the Court's discretion and may include attorney['s] fees."  Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.  *Manous v. Manousogianakis*, 824 N.E.2d 756, 767 (Ind. Ct. App. 2005) (citing *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind. Ct. App. 2003)).  Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal.  *Id.*  A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious.  *Id.* at 767-68.

Indiana appellate courts have formally categorized claims for appellate attorney fees into "procedural" and "substantive" bad faith claims.  *Id.* at 768.  Here, Madison County argues that an award of appellate attorney's fees is warranted

based on both procedural and substantive failures. "Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Id*. "To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility." *Id*.

[31]     While we agree with Madison County that Patrick did not strictly comply with our procedural rules, and that his appeal arguably "require[d] the maximum expenditure of time both by the opposing party and this reviewing court," we nonetheless find that the flaws "do not rise to the level of egregiousness punishable under Appellate Rule 66(E)." *Id.*   With regard to the claims of substantive bad faith, we cannot say that Patrick's claim is utterly devoid of all plausibility. After the trial court issued the September 2016 Order that waived certain taxes, Madison County intervened and requested a corrected order, which was issued on March 31, but the parties were unable to agree on the effect of the March 31 Order and requested an order of clarification, which was issued on May 23. There was continued disagreement and yet another order was issued on October 9. At least two hearings were held during the course of the proceedings. At the September 11, 2017 hearing, counsel for Madison County acknowledged, "The word sale [in Indiana Code section 6-1.1-25-4(f)] appears to be the confusing part[,]" *Tr. Vol. II* at 6, and "[T]here's trying to be a statutory change to clear this up so hopefully we're not back here forever doing

it again because this is clearly vexed us from very knowledgeable people on these laws[.]" *Id.* at 16. Given the statutes, claims, as well as the record before us, we conclude that an award of appellate attorney's fees is not warranted in this case.[14]

Affirmed.

Baker, J., and Bradford, J., concur.

---

[14] Madison County filed with this court a Motion to Strike, asking us to strike a portion of Patrick's Appellant's Brief, specifically the "Relief; unappealable taxes" section, which (1) refers to purported tax payments that Patrick had made following the trial court's October 9 Order and (2) asserts, without factual or record support, that SRI, the private company involved in tax sales, including this one, has "unclean hands." *Appellant's Br.* at 26. As the section addresses matters occurring in the trial court after the date of the appealed order, and also makes unsupported allegations, we grant Madison County's Motion to Strike by separate order.