## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 03 2019, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:
TANDRA S. JOHNSON AND
TANDRA S. JOHNSON, LLC

Michael H. Michmerhuizen
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gene Towns and Jackie Towns,

*Appellants-Intervenors,*

v.

Josephine Long and Joseph Long,

*Petitioner and Respondent,*

and

Tandra S. Johnson and Tandra S. Johnson, LLC,

*Appellee.*

December 3, 2019

Court of Appeals Case No.
19A-DR-1047

Appeal from the Wells Circuit Court

The Honorable Kenton W. Kiracofe, Judge

Trial Court Cause No.
90C01-0902-DR-4

**Tavitas, Judge.**

# Case Summary

In this interlocutory appeal, Gene and Jackie Towns ("Grandparents") appeal the trial court's order denying Grandparents' motion to disqualify Tandra Johnson and Tandra S. Johnson, LLC ("Attorney Johnson") as the attorney of Joseph Long and the trial court's grant of Attorney Johnson's motion for sanctions.[1]  We affirm.

# Issues

Grandparents raise two issues, which we restate as:

    I.     Whether the trial court properly denied Grandparents' motion to disqualify and remove Attorney Johnson; and

    II.    Whether the trial court properly granted Attorney Johnson's request for sanctions under Indiana Code Section 34-52-1-1.

---

[1] This is an interlocutory appeal as of right under Indiana Appellate Rule 14(A) because it is an order "[f]or the payment of money."  Johnson argues that Grandparents are judicially estopped from challenging the denial of their motion to disqualify Johnson and that Grandparents may challenge only the award of sanctions.  According to Johnson, Grandparents asserted to the trial court that this appeal concerned only the award of sanctions, not the denial of Johnson's disqualification.  *See* Appellee's App. Vol. II pp. 2-3 ("Attorney Tandra Johnson has not been disqualified, and since the sole issue on appeal is whether the granting of Attorney Johnson's request for fees and expenses was error, this matter pertaining to the custody motion filed by [Grandparents] can proceed on the merits simultaneously with the interlocutory appeal.").  Although we agree that Grandparents' assertions to the trial court were incorrect and misleading, we note that we have jurisdiction to consider both the denial of the motion to disqualify and the granting of the motion for sanctions.  *See Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 322 (Ind. Ct. App. 2006) (holding that the court had jurisdiction to review both the discovery order and the order imposing sanctions for failure to comply with the discovery order in the interlocutory appeal as of right).  Under these circumstances, we will address Grandparents' arguments regarding the denial of their motion to disqualify Johnson.

On cross-appeal, Attorney Johnson raises one issue, which we restate as whether she is entitled to fees under Indiana Appellate Rule 66(E).

## Facts

Jackie Towns is the mother of Joseph Long, and Gene Towns is Jackie's husband and Joseph's stepfather. Joseph was married to Josephine Long in 2006, and they are the parents of M.L., who was born in June 2006. During their marriage, Joseph, Josephine, and M.L. lived with Grandparents.

In 2009, Joseph and Grandparents consulted with Attorney Johnson to initiate a dissolution of marriage action regarding Joseph and Josephine's marriage. Grandparents paid Joseph's legal bills related to the dissolution because Joseph did not have the funds to hire a lawyer. Attorney Johnson filed an appearance on behalf of Joseph and filed a petition for dissolution of marriage. Joseph and Josephine executed a settlement agreement in July 2009. The settlement agreement provided for joint legal custody and shared physical custody of M.L. between Joseph and Josephine. The settlement agreement also provided: "The parties agree that Husband's step-father, Gene Towns, shall be designated as the de facto custodian of said minor child, in accordance with Ind. Code § 31-9-1-35.5."[2] Appellants' App. Vol. II p. 142.

---

[2] The de facto custodian definition is actually found at Indiana Code Section 31-9-2-35.5, which provides that a de facto custodian is:

After the dissolution, Joseph and Josephine had significant post-dissolution issues. On December 12, 2010, Joseph signed a Fee Engagement Agreement with Attorney Johnson. The Fee Engagement Agreement identified Joseph as the "Client" and provided:

> I employ Tandra S. Johnson, Esq. (hereinafter "my attorney") of the law firm Tandra S. Johnson, LLC (hereinafter "Firm"), and such of the Firm's agents and employees as it may use to take such action as the Firm deems necessary, to represent me in a contempt, parenting time, possible custody matter action.

*Id.* at 57, 59. Grandparents then signed a Guarantee, which provided:

> I, the undersigned, personally guarantee the performance of the client, to the above terms. I understand that the client is the person to whom Tandra S. Johnson will answer and by whom she will be instructed. This guarantee does not create the attorney client relationship between Tandra S. Johnson, LLC and me. I will only receive such information regarding this case as the client should approve. I understand that Tandra S. Johnson, LLC will rely on this guarantee in extending credit to the client. This guarantee shall be immediately binding on the Guarantor and shall continue in full force and effect until the Guarantor has given written notice by registered mail to Tandra

---

[A] person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least:

   (1) six (6) months if the child is less than three (3) years of age; or

   (2) one (1) year if the child is at least three (3) years of age.

Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period. The term does not include a person providing care for a child in a foster family home (as defined in IC 31-9-2-46.9).

S. Johnson, LLC not to extend further credit. Delivery of notice shall operate to prevent any liability on the part of the Guarantor to future indebtedness, but Guarantor shall remain liable upon all indebtedness then existing.

*Id.* at 60.

[6] Joseph and Josephine entered into a mediation agreement in September 2013, and Gene was removed as M.L.'s de facto custodian at that time.

[7] In August 2018, Joseph moved out of Grandparents' residence and took M.L. with him. On August 11, 2018, Grandparents informed Attorney Johnson that they were "no longer responsible for any of Joseph's legal bills." Tr. Vol. II p. 129. In September 2018, Grandparents sought to intervene in the post-dissolution proceedings and filed a claim for legal custody and parenting time of M.L. The trial court granted Grandparents "intervenor status to determine [their] de facto custodian status." Appellants' App. Vol. II p. 11.

[8] In November 2018, Grandparents filed a motion to disqualify Attorney Johnson and for sanctions. Attorney Johnson responded to Grandparents' motion and requested that Grandparents' motion for sanctions be denied and that she be granted sanctions under Indiana Code Section 34-52-1-1 because Grandparents' motion was frivolous, unreasonable, and groundless.

[9] At an evidentiary hearing in December 2018, Attorney Johnson called Donald Lundberg, former Executive Director of the Indiana Supreme Court Disciplinary Commission, to testify. Lundberg testified that, in his opinion,

Grandparents did not have an attorney-client relationship with Attorney Johnson and that there was "no basis to disqualify her." *Id.* at 152. Rather, Grandparents had "some incidental or consequential benefits from Ms. Johnson's representation of Joe." *Id.* at 151.

[10] The trial court entered findings of fact and conclusions of law denying Grandparents' motion to disqualify Attorney Johnson; denying Grandparents' request for sanctions; and granting Attorney Johnson's request for sanctions under Indiana Code Section 34-52-1-1. The trial court ordered Grandparents to pay Attorney Johnson's fees and expenses for contesting Grandparents' motion to disqualify in the amount of $27,614.78. Grandparents now appeal.

## Analysis

[11] The trial court here entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Trial Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*; Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *K.I.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

# I. Disqualification of Counsel

"A trial court may disqualify an attorney for a violation of the Indiana Rules of Professional Conduct ("IRPC")." *Reed v. Hoosier Health Sys., Inc.*, 825 N.E.2d 408, 411 (Ind. Ct. App. 2005). Grandparents argue that Attorney Johnson violated two Indiana Rules of Professional Conduct, Rule 1.7 and Rule 1.9. Rule of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by

the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

[13]     Rule of Professional Conduct 1.9 provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules

would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[14] A current or former attorney-client relationship between Grandparents and Attorney Johnson would be required for either of these rules to be applicable here. Grandparents argue that Attorney Johnson should have been disqualified from representing Joseph in the post-dissolution proceedings because, at the same time, Attorney Johnson also represented Grandparents, who later intervened in the action. Alternatively, Grandparents argue that Attorney Johnson previously represented Grandparents and that Attorney Johnson owed them a duty not to act contrary to their interests.

[15] Grandparents later contend that Attorney Johnson jointly represented Joseph and Grandparents in 2009, that Attorney Johnson acted only as Joseph's attorney in 2010 and early 2011, and that Attorney Johnson had an attorney-client relationship with Grandparents from 2011 through 2018. Attorney Johnson, however, argues that she never had an attorney-client relationship with Grandparents, and the trial court agreed.

[16] The determinative issue here is whether Attorney Johnson had an attorney-client relationship with Grandparents. "[A]n attorney-client relationship need not be express, but may be implied by the conduct of the parties." *Matter of Kinney*, 670 N.E.2d 1294, 1297 (Ind. 1996). The relationship is consensual,

existing only after both attorney and client have consented to its formation. *Id.* "[T]he mere provision of nominal legal advice is not automatically dispositive where the existence of an attorney-client relationship is disputed." *Id.* at 1298.

[17] "'Attorney-client relationships have been implied where a person seeks advice or assistance from an attorney, where the advice sought pertains to matters within the attorney's professional competence, and where the attorney gives the desired advice or assistance.'" *Douglas v. Monroe*, 743 N.E.2d 1181, 1184 (Ind. Ct. App. 2001) (quoting *In re Anonymous*, 655 N.E.2d 67, 71 (Ind. 1995)). "'An important factor is the putative client's subjective belief that he is consulting a lawyer in his professional capacity and on his intent to seek professional advice.'" *Id.* (quoting *Anonymous*, 655 N.E.2d at 70)). "[A] 'would-be client's unilateral belief cannot create an attorney-client relationship.'" *Id.* at 1185 (quoting *Hacker v. Holland*, 570 N.E.2d 951, 955 (Ind. Ct. App. 1991), *trans. denied*). The trial court concluded that no attorney-client relationship existed, and we must determine whether the trial court's conclusion is clearly erroneous.

[18] At the evidentiary hearing, Gene testified that he believed Attorney Johnson represented "all of us." Tr. Vol. II p. 30. Grandparents occasionally had conversations with Attorney Johnson about the dissolution and post-dissolution proceedings, they provided information to Attorney Johnson, and they occasionally emailed with Attorney Johnson. Gene also attended a mediation with Joseph and was named de facto custodian of M.L. in Joseph's settlement agreement with Josephine. According to Grandparents, Attorney Johnson never told Grandparents to obtain their own counsel.

[19] The trial court, however, was also presented with evidence that: (1) Attorney Johnson represented Joseph in his dissolution proceedings with Josephine; (2) when post-dissolution issues arose, Attorney Johnson and Joseph entered into a written Fee Engagement Agreement by which Joseph employed Attorney Johnson as his attorney in the post-dissolution proceedings; (3) Grandparents entered into a Guarantee by which they agreed to guarantee Joseph's payments to Attorney Johnson; (4) the Guarantee specifically provided that no attorney-client relationship existed between Attorney Johnson and Grandparents; (5) Grandparents were never a party to the dissolution or post-dissolution proceedings prior to intervening; (6) correspondence from Attorney Johnson was addressed to Joseph; (7) Attorney Johnson's bills were sent to Joseph although they were paid by Grandparents; (8) Attorney Johnson's bills clearly identified Joseph as the client; (9) Lundberg gave an expert opinion that Attorney Johnson did not have an attorney-client relationship with Grandparents and that there was no valid reason for Attorney Johnson's disqualification; (10) Attorney Johnson testified that she told Grandparents that she represented only Joseph and that Joseph gave her permission to share information with Grandparents as Attorney Johnson "saw fit"; and (11) Joseph testified that he heard Attorney Johnson tell Grandparents that she was only Joseph's attorney on more than one occasion. Tr. Vol. II p. 183.

[20] There was no express agreement to create an attorney-client relationship between Grandparents and Attorney Johnson. As such, the trial court addressed whether the evidence established an implied attorney-client

relationship. After discussing and weighing the evidence at length, the trial court found:

> 27. The Court finds that the conduct of Johnson towards [Grandparents] is insufficient to establish an attorney-client relationship was impliedly formed with either Gene or Jackie.
>
> 28. The Court specifically finds that an attorney-client relationship was not implied by the conduct of Johnson and [Grandparents].

Appellants' App. Vol. II p. 29.

[21] Our Supreme Court, however, has held that, in reviewing findings of fact and conclusions of law, "[a]ppellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Grandparents' argument that they had an attorney-client relationship with Attorney Johnson is merely a request that we reweigh the evidence, which we cannot do. Given the evidence presented at the hearing, we cannot say that the trial court's findings are clearly erroneous or that its conclusion that no attorney-client relationship existed between Attorney Johnson and Grandparents is clearly erroneous. Because no attorney-client relationship was established, Grandparents failed to demonstrate a violation of the Indiana Rules of Professional Conduct. Accordingly, the trial court's denial of Grandparents' motion to disqualify Attorney Johnson is not clearly erroneous.

## II. Attorney Fees

Grandparents also appeal the trial court's grant of Attorney Johnson's motion for sanctions pursuant to Indiana Code Section 34-52-1-1. Indiana Code Section 34-52-1-1(b) provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

A claim is "frivolous" if "it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law." *Am.'s Directories Inc., Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1070-71 (Ind. Ct. App. 2005), *trans. denied*. A claim is "unreasonable" if, "based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation." *Id.* at 1071. A claim is "groundless" if "no facts exist which support the claim relied upon by the losing party." *Id.*

[24] The trial court concluded that Grandparents' motion to disqualify Attorney Johnson was frivolous, unreasonable, and groundless. Specifically, the trial court found:

> 52. There was never an attorney-client relationship created between Johnson and [Grandparents].
>
> 53. From the very beginning, [Grandparents'] relationship with Johnson was centered around Joe and his marriage to Josephine, and then, subsequently, around Joe and post-dissolution matters related to Josephine and their son, [M.L.].
>
> 54. Although [Grandparents] accompanied Joe to his initial appointment with Johnson, their purpose was to finance Johnson's representation of Joe in a dissolution of his marriage to Josephine.
>
> 55. Subsequently, [Grandparents] signed an agreement that specifically distinguished between Joe as the client and themselves as the guarantors of any financial responsibility Joe had with Johnson. This agreement says the exact opposite which they have attempted to bring the court's attention in the Verified Motion to Disqualify and Remove Counsel of Record and for Sanctions.
>
> 56. [Grandparents] cited no case law that remotely supports the conclusion that if two parties agreed to the appointment of a de facto custodian . . . that it is sufficient to create an attorney-client relationship between the de facto custodian and counsel for one of the parties. Further, [Grandparents] have cited no case law that remotely supports the conclusion that sending a courtesy copy of a letter directed specifically to a client creates an attorney-client relationship with the copied parties. Gene Towns admitted that he knew that Joe was the client, but testified that

that was just a "technicality." Rule 3.7 of the Indiana Rules of Professional Conduct does not support disqualifications, and [Grandparents'] reliance on this Rule was wholly and completely without merit. The Court finds that [Grandparents'] Verified Motion to Disqualify and Remove Counsel of Record and for Sanctions is "frivolous" as defined in the law.

57. The Verified Motion to Disqualify and Remove Counsel of Record and for Sanctions is "unreasonable" because, based upon all of the circumstances[,] no reasonable attorney would consider the claim worthy of raising. As Donald Lundberg pointed out, there is simply no basis to find that Johnson was also an attorney for [Grandparents]. [Grandparents] had no pending claims and specifically signed an agreement that Johnson was not their attorney. Johnson never appeared for [Grandparents] in this action nor did she perform any legal services on behalf of [Grandparents]. All of Johnson's efforts were directed solely toward Joe. No reasonable attorney, after reading Rule 3.7 and the comments thereto, would assert that Rule 3.7 dictates that Johnson be disqualified.

58. The Court finds no facts supporting the creation of an attorney-client relationship, thus [Grandparents'] Verified Motion to Disqualify and Remove Counsel of Record and for Sanctions is "groundless."

59. The Court's decision to award attorney's fees is buttressed by the fact that it appears to the Court that the attempt to disqualify Johnson was an abuse of the legal process designed to deprive Joe of one of his fundamental rights—the right to choose his own counsel.

Appellants' App. Vol. II pp. 32-33. The trial court noted that Attorney Johnson resisted the motion to disqualify at her own expense because Joseph had very

limited financial resources and did not have the funds to hire another attorney who would have to familiarize himself or herself with ten years of litigation. The trial court also noted:

> It is unfortunate [Grandparents] have elected to pursue a motion to disqualify, using resources and court time, which could have been better spent resolving [Grandparents'] custody motion on the merits. Their choice of action has only further prolonged this matter and caused uncertainty for all parties, including the minor child.

*Id.* at 33.

[25] According to Grandparents, there was substantial evidence that Attorney Johnson was their attorney; they made a "rational, good faith argument that Johnson should be disqualified"; and there is no evidence that Grandparents made the motion to disqualify Attorney Johnson primarily to "harass or injure" Joseph. Appellants' Br. p. 20. Grandparents also argue that Lundberg's opinion was not based on a complete review of the record and that they had the right to contest Lundberg's opinion without being subject to sanctions.

[26] The trial court's decision, however, was not based solely on Lundberg's opinion. Although there was undeniably contact between Grandparents and Attorney Johnson during Joseph's dissolution and post-dissolution proceedings, there was also significant evidence that there was no attorney-client relationship between Grandparents and Attorney Johnson. The trial court weighed the evidence and assessed the witnesses' credibility and found that Grandparents' actions were frivolous, unreasonable, groundless, and an abuse of process. On

appeal, we cannot reweigh the evidence or judge the credibility of the witnesses. The trial court was in the best position to determine Grandparents' motives in bringing the action to disqualify Attorney Johnson. Under these circumstances, the trial court's findings of fact and conclusions of law regarding Attorney Johnson's request for sanctions under Indiana Code Section 34-52-1-1 are not clearly erroneous.[3]

### III. *Indiana Appellate Rule 66(E)*

[27] Attorney Johnson argues that she is entitled to damages under Indiana Appellate Rule 66(E), which provides: "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution." Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is "limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Picket Fence Prop. Co. v. Davis*, 109 N.E.3d 1021, 1033 (Ind. Ct. App. 2018), *trans. denied*. While Appellate Rule 66(E) provides us with "discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Id.* "A strong showing is required to justify

---

[3] Grandparents do not challenge the trial court's calculation of fees and expenses in the amount of $27,614.78.

an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.*

[28] We have categorized claims for appellate attorney fees into "procedural" and "substantive" bad faith claims. *Id.* "Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Id.* "To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility." *Id.*

[29] Attorney Johnson argues that Grandparents exhibited both procedural and substantive bad faith in their appeal. As for procedural bad faith, although Grandparents did not strictly comply with our appellate rules, we cannot say that Grandparents flagrantly disregarded those rules or that the briefs were written to require maximum expenditure of time. Regarding substantive bad faith, although Grandparents' arguments are unsuccessful, we cannot say that their contentions are utterly devoid of all plausibility. Given our responsibility to use "extreme restraint" in awarding damages under Appellate Rule 66(E), we decline to award damages here. *Id.*

# Conclusion

[30] The trial court's denial of Grandparents' motion to disqualify Attorney Johnson is not clearly erroneous, and the trial court's grant of Attorney Johnson's

motion for sanctions under Indiana Code Section 34-52-1-1 is not clearly erroneous.  We decline to award damages under Indiana Appellate Rule 66(E). We affirm.

[31]     Affirmed.

Brown, J., and Altice, J., concur.